UNITED STATES of America, Plaintiff–Appellee,

v.

Demetrius Cyrus GEORGALIS, a/k/a Cy Georges, Defendant–Appellant.

No. 79–5183.

United States Court of Appeals, Fifth Circuit. Unit B

Dec. 3, 1980.

Rehearing and Rehearing En Banc Denied Jan. 22, 1981.

G. B. "Cap" Wilson, II, Gainesville, Fla., for defendant–appellant.

C. Wesley G. Currier, Asst. U.S. Atty., Miami, Fla., for plaintiff–appellee.

Before HILL, KRAVITCH and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

Appellant, Demetrius Cyrus Georgalis, a/k/a Cy Georges, appeals a seven count jury conviction for mail fraud, 18 U.S.C. § 1341.[1] Georgalis contends that he was victimized by impermissible prosecutorial questioning, that the elements of mail fraud were not proved, that the trial judge erroneously admitted into evidence certain letters and copies of letters, that there was a fatal variance between the charges set forth in the grand jury indictment and the proof offered at trial, and that insufficient evidence was presented to the grand jury upon which to base its factual findings. After a full review of the record, we find Georgalis's contentions without merit, with the exception that mail fraud was not proved as to counts two and six. Thus, we affirm his conviction on counts three, four, five, seven, and eight. We reverse on counts two and six.

### FACTS

During part of 1971 and 1972, Georgalis was president of a corporate entity known as Colorflame of Hollywood, Inc. Colorflame's purpose was to develop, market, and have manufactured the Colorflame product line. The chief Colorflame product was a smokeless, odorless fuel for decorative lighting which supposedly burned in all the colors of the rainbow. Colorflame was designed for use in homes and restaurants as table and ornamental decorations, and as fuel to cook flaming foods and desserts. The liquid fuel did not burn in all the colors of the rainbow, however, and was toxic when it burned in green. Nor was a safe and dependable mechanism for burning the fuel ever developed. During 1971 and 1972 Georgalis and others solicited various people to make investments in Colorflame for stock and/or distributorships. Part of the solicitation involved demonstrations of the liquid fuel and an explanation of how a sophisticated program for development, marketing, and distribution of the product would be employed. No such program was ever employed. Georgalis also utilized brochures and news releases to advertise Colorflame products which, save for demonstration purposes, were non–existent. These non–existent products included Colorflame vessels for the burning of the Colorflame liquid fuel, a solid fuel, and Colorflame wax candles with scent additives.

As a result of the solicitations, advertising, and demonstrations, various people invested over one half million dollars in Colorflame. Evidence at trial indicated that Georgalis diverted approximately three out of every five dollars received by Colorflame into other business enterprises in which he was involved. When the Board of Directors of Colorflame realized that the investment money was depleted, they took control of Colorflame from Georgalis in August, 1972. An investigation ensued.

On May 5, 1977, Georgalis was charged with a nine count indictment for mail fraud under 18 U.S.C. § 1341. The indictment resulted from the testimony and information supplied by the sole witness, a postal

---

1. Title 18, section 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

inspector. In essence, the indictment charged Georgalis with using the mails in furtherance of a scheme to defraud, wherein he promoted a questionable product, the liquid fuel, as a good product, and promoted other non–existent products. Further, the indictment charged that none of the products were ready to be marketed, as promised by Georgalis to the investors.

The government based its mail fraud case upon nine letters that were all mailed after Georgalis received the money resulting from his fraudulent scheme. All such money had been received prior to the applicable five–year statute of limitations. The trial judge permitted the government to introduce into evidence, without establishing a chain of custody, the nine letters, plus certain other letters and copies of letters held in the government's exclusive possession for five years. Several of the incriminating letters on which the government based its case were mailed by employees of Georgalis's Colorflame corporation and by victims of Georgalis's scheme.

At the culmination of the three–week mail fraud jury trial, during cross–examination, the prosecutor questioned Georgalis about a non–existent felony conviction for issuing fraudulent checks. The prosecutor relied on an uncertified copy of a Federal Bureau of Investigation rap sheet and a Florida probation report. Georgalis denied any conviction. Shortly thereafter, the court adjourned for the day. The next morning, the prosecutor began by telling the jury that he was in error and that Georgalis was correct in denying a prior conviction. The trial judge instructed the jury to disregard the prosecutor's question. Georgalis moved for a mistrial on the ground of prejudice resulting from the question. The trial judge denied the mo-

tion. Subsequently, the jury convicted Georgalis on seven of the nine counts of mail fraud.

## ISSUES

In this appeal, Georgalis raises six issues:

(1) Whether the improper statements made by the prosecutor concerning Georgalis's non–existent felony conviction constituted fatal error requiring a mistrial;

(2) whether the letters were sent after the fraudulent scheme had been completed and were therefore outside the scope of the statute of limitations;

(3) whether there was a fatal variance between the charges in the indictment and the proof offered at trial;

(4) whether there was a question of the letters' authenticity such that the government should have presented a custodian to account for the whereabouts of the letters over the five year period;

(5) whether the jury could reasonably have found that letters not mailed by Georgalis were caused to be mailed by Georgalis so as to support his conviction for mail fraud; and,

(6) whether the indictment should be quashed because there was insufficient evidence presented to the grand jury upon which to base its factual findings.

## DISCUSSION

### I.

■ We must initially determine whether Georgalis suffered sufficient prejudice from the prosecutor's violation of Fed.R.Evid. 609 [2] to require reversal of the trial judge's denial of a new trial.

2. Fed.R.Evid. 609 provides, in pertinent part:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative

value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(e) Pendency of appeal. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

At the close of three days of the government's cross–examination of Georgalis, the following exchange took place.

Mr. Currier (prosecutor): Mr. Georges, is it not true sir, that in 1973 you were convicted of the felony of writing worthless checks?

Mr. Georgalis: That is absolutely untrue, sir. I'm shocked that you would say that.

Georgalis's counsel: So am I.

Mr. Currier: You did not receive four years probation and directed to make restitution—

Georgalis's counsel: Your Honor—

Mr. Currier:–on a worthless check charge, sir? [3]

The Supreme Court has held that an error is harmless if it had "but very slight effect" upon the jury, "except perhaps where the departure is from a constitutional norm or a specific command of Congress." *Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–1248, 90 L.Ed. 1557 (1946). Here, the violation of Rule 609 arguably constitutes a departure from a "specific command of Congress." *Id.*, at 765, 66 S.Ct. at 1248. The appropriate standard of review in a case involving a violation of Rule 609 was not addressed in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), where the Court held that in cases involving a departure from constitutional norms an appellate court must be convinced "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Twice, the District of Columbia Circuit has left undecided whether the *Kotteakos* standard, the *Chapman* standard, or an intermediate standard is proper in reviewing Rule 609 violations. *United States v. Dorsey*, 591 F.2d 922 (D.C.Cir.1978); *United States v. Smith*, 551 F.2d 348 (D.C.Cir.1976). This circuit has never held that a violation of the rules may fall outside of *Kotteakos*, and has felt bound by *Kotteakos* to uphold

a judgment whenever an error has "no substantial influence" and enough "untainted evidence supports the result." *E.g., United States v. Rodriguez*, 573 F.2d 330, 333 (5th Cir. 1978).

In a case relied on by Georgalis, the Second Circuit identified the following three factors in assessing claims of prejudice from improper prosecutorial questioning: (1) the degree of initial prejudice; (2) the effectiveness of corrective measures; and (3) the importance of the defendant's credibility in view of the strength of the government's other evidence. *United States v. Semensohn*, 421 F.2d 1206 (2d Cir. 1970).

We have reviewed the trial transcript and have determined that the jury was not aware that the prosecutor had before him an FBI rap sheet. We, therefore, conclude that there was no aggravation of initial prejudice by the presence of the FBI rap sheet. The degree of initial prejudice was aggravated, however, by the absence of any other implied criminal convictions of Georgalis, and the similarity of the implied prior conviction, issuing fraudulent checks, to the current prosecution, for mail fraud. Initial prejudice was mitigated by Georgalis's denial of a conviction and the prosecutor's decision not to introduce any evidence of a prior conviction.

This circuit has frequently relied upon corrective instructions in finding harmless error after impermissible questioning about prior convictions and bad acts. *E.g., United States v. Walker*, 621 F.2d 163 (5th Cir. 1980). Here, the day after the prosecutor impermissibly asked concerning Georgalis's non–existent check fraud conviction, the prosecutor and the court made the following statements to the jury:

Mr. Currier (prosecutor): Yes, Your Honor ·

Before we begin, I should like to make a statement to the court and to the jury.

---

**3.** The prosecutor asked such a question because Georgalis had been sentenced by a Florida state court for check fraud; but adjudication was withheld pending satisfactory completion of four years probation. Therefore, by operation of Florida law there existed no con-

viction by which Georgalis could be impeached pursuant to Fed.R.Evid. 609. We admonish the government that proper procedure for impeaching a witness pursuant to Rule 609 is to possess, when so impeaching, a certified copy of the conviction.

The question I asked of the defendant during cross-examination yesterday as to whether he had ever been convicted of a felony was based upon erroneous information, and I will stipulate that the defendant's answer denying any such conviction was a truthful answer, and I apologize to the defendant and to the court and to the jury for asking such a question.

The Court: All right, sir. Thank you.

Ladies and gentlemen, in furtherance of what Mr. Currier has stated, I want now to instruct you to disregard that question. Put it out of your minds. Counsel has stated that the question was based on erroneous information. As you know, of course, questions, in any event, are not evidence. The evidence comes from the answers. In this case, it has been stipulated to that the answer given by the defendant was a truthful answer. Therefore, there is no reason why you should give that question any further consideration at all. Do you all understand what I am talking about to you, to completely disregard the question? Give it no thought whatsoever in your deliberation of this case, and can I assume that you will do that?

Thank you, ladies and gentlemen. Shall we proceed?

Because the jury heard both the prosecutor admit his error and the trial judge instruct them to disregard the improper question, we find that these corrective measures were particularly effective. This is so, even though these corrective measures came after the jury had spent an evening contemplating the improper innuendo. The jury was never left with any evidence or information it should not have received. Under the circumstances, there was little likelihood that the jurors believed that Georgalis had ever been convicted of any crime. We share the perspective of the trial judge who stated: "[i]f you want my frank opinion, I think that the prejudice, if any, of this whole situation after I have instructed the jury, is going to be more towards the government than it is the defendant."

Ultimately, however, we rest our decision that the prosecutor's impermissible question constituted harmless error on the strength of the case against Georgalis. As this court has stated, quoting Wright's Federal Practice and Procedure, "[p]erhaps the single most important factor in weighing whether an error was harmful is the strength of the case against the defendant." *United States v. Whitaker*, 619 F.2d 1142 (5th Cir. 1980). Here, the government convincingly proved the elements of mail fraud: (1) a scheme to defraud, and (2) use of the mails for the purpose of executing that scheme. We are aware that this court, in dictum, has stated that "to ask a defendant whether he has had criminal convictions, without possessing a certified copy of the record, is frought with the possibilities of error .... We would be slow to find that any such error was not prejudicial." *United States v. Constant*, 501 F.2d 1284, 1288 (5th Cir. 1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840 (1975), quoting *Ciravolo v. United States*, 384 F.2d 54, 55 (1st Cir. 1967). After an examination of the record, we find the government's case against Georgalis, as was the government's case in *Constant*, convincing enough to allow us to term the impermissible question harmless error.

## II.

We must next determine whether the jury could reasonably have found that the letters were mailed in furtherance of the scheme, bringing the case within the applicable five-year statute of limitations. Precedent is clear that letters designed to conceal a fraud, by lulling a victim into inaction, constitute a continuation of the original scheme to defraud. Letters mailed after a scheme has reached fruition cannot have been "for the purpose of executing" the scheme within the meaning of 18 U.S.C. § 1341. *E.g., United States v. Ashdown*, 509 F.2d 793, (5th Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975). Having read the letters in question, we determine that the letters in counts three, four, five, seven and eight were designed

either to allay suspicions, or to solicit further funds. Accordingly, we find them to be in furtherance of the scheme to defraud. Further, Georgalis was indicted May 5, 1977. All the letters involved in the mail fraud counts were mailed within the five–year period immediately preceding the indictment. Therefore, we find compliance with the statute of limitations.

The letters in counts two and six, however, were not in furtherance of the scheme to defraud. The count two letter was written by a victim of Georgalis's scheme recounting the promises, so far unkept, made by Georgalis. The count six letter was also written by a victim, threatening to take legal action.

Consequently, while we find the mailings sufficient on counts three, four, five, seven, and eight, we must reverse on counts two and six.[4]

## III.

We must also decide whether there was a fatal variance between the charges contained in the indictment and the proof offered at trial. Georgalis contends that while he was indicted for mail fraud, he was forced at trial to shift from defending a mail fraud charge to defending an embezzlement charge.

■ A variance between indictment and proof is fatal only when it affects the "substantial rights" of the defendant by insufficiently notifying him of the charges against him so that he may prepare a proper defense. *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *United States v. Lambert*, 501 F.2d 943 (5th Cir. 1974) (en banc). As this court has stated, "[i]t is not necessary, of course,

that the government should have proved each of the charges contained in the indictment, but only necessary that a sufficient number of the charges in each count should be proven to constitute a violation of the statute relied upon." *Myrick v. United States*, 332 F.2d 279, 281 (5th Cir.), *cert. denied*, 377 U.S. 952, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964).

■ Having reviewed the record, we find that while the government offered no proof of certain allegations of certain misrepresentations contained in the indictment, there was no fatal variance such that Georgalis' "substantial rights" were affected. Sufficient proof was offered to convict Georgalis of mail fraud on counts three, four, five, seven, and eight.

## IV.

We now turn to the question of whether the trial judge abused his discretion in permitting the government to introduce into evidence, without establishing a chain of custody, certain letters and copies of letters held in the government's exclusive possession for five years.

■ A duplicate may be admitted into evidence unless opposing counsel meets the burden of showing that there is a genuine issue as to the authenticity of the unintroduced original, or as to the trustworthiness of the duplicate, or as to the fairness of substituting the duplicate for the original. Fed.R.Evid. 1003;[5] 11 J. Moore Federal Practice ¶ 1003.02 (2nd ed. 1976). That the government had exclusive possession of certain copies for five years raises no issue.

■ As to the original letters, Fed.R. Evid. 901[6] provides that authentication as a

---

**4.** On each convicted count, Georgalis was sentenced to a three–year sentence to run concurrently with the other sentences. On counts two and three, Georgalis was also fined $1,000. The fine on count two, therefore, prevents application of the "concurrent sentence doctrine." See, *United States v. Alfrey*, 620 F.2d 551 (5th Cir. 1980).

**5.** Fed.R.Evid. 1003 provides:
A duplicate is admissible to the same extent as an original unless (1) a genuine ques-

tion is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

**6.** Fed.R.Evid. 901 provides, in pertinent part:
(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

condition precedent to admissibility is satisfied by any evidence sufficient to support a finding that the matter in question is what its proponent claims. Rule 901(b) specifically authorizes reliance upon "[a]ppearance, contents" and surrounding "circumstances" for authentication of letters. The trial judge, therefore, did not abuse his discretion in finding that the requirement of authentication was satisfied by evidence other than testimony concerning the chain of custody.

## V.

We must decide whether the jury could reasonably have found that the letters not mailed by Georgalis were caused to be mailed by him so as to support his conviction for mail fraud.

 To be convicted of mail fraud, Georgalis need not use the mails; he need only have had a reasonable basis to foresee that his actions would result in the use of the mails. *E.g., United States v. Shryock,* 537 F.2d 207 (5th Cir. 1976), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977). We must consider the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1940); *United States v. Foshee,* 606 F.2d 111 (5th Cir. 1979), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1036, 62 L.Ed.2d 766 (1980). After so doing, we conclude that the jury could reasonably have found that Georgalis could have clearly foreseen use of the mails by his employees in sending the lulling letters.

## VI.

The last issue is whether the trial judge correctly denied Georgalis's motion to quash the indictment for insufficiency of the evidence. Subsequent to trial, the trial judge held a hearing concerning Georgalis's assertions of grand jury abuse. At that hearing, Georgalis claimed abuse of the grand jury

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

process only on the ground that the grand jury had before it insufficient evidence upon which to base its factual findings.

 Georgalis continues to claim that the grand jury process was abused; his claim of abuse, however, is a stale reiteration of the insufficiency of the evidence assertion previously denied by the trial judge. He makes no argument that the grand jury was either biased or illegally constituted; he admits that the indictment is valid on its face. Indictments may not be attacked merely upon the basis that there was insufficient or incompetent evidence presented to the grand jury. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Johnson,* 615 F.2d 1125 (5th Cir. 1980).

## CONCLUSION

We hold that Georgalis was not victimized by impermissible prosecutorial questioning, that the elements of mail fraud were sufficiently proved as to five of the seven convicted counts, that the trial judge correctly admitted into evidence certain letters and copies of letters, that there was no fatal variance between the charges set forth in the grand jury indictment and the proof offered at trial, and that there was no abuse of the grand jury process. Accordingly, we affirm the convictions on counts three, four, five, seven, and eight. We reverse on counts two and six.

**AFFIRMED IN PART, REVERSED IN PART.**

(4) Distinctive characteristics and the like. Appearance, contents, substance, internal matters, or other distinctive characteristics, taken in conjunction with circumstances.