UNITED STATES of America,
Plaintiff-Appellee,

v.

James R. BREWER,
Defendant-Appellant.

No. 85–3160.

United States Court of Appeals,
Eleventh Circuit.

Jan. 13, 1987.

H. Jay Stevens, Asst. Federal Public Defender, Orlando, Fla., for defendant-appellant.

Mr. Stephen J. Calvacca, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before ANDERSON and CLARK, Circuit Judges and SIMPSON, Senior Circuit Judge.

PER CURIAM:

■ A jury found James R. Brewer guilty of five counts of mail fraud, 18 U.S.C. § 1341, and one count of interstate transportation of securities obtained by fraud, 18 U.S.C. §§ 2 & 2314. The trial court sentenced him to pay a five thousand dollar fine and serve a seven year term of imprisonment on the securities charge and five years imprisonment on each of the fraud charges. The judgment further ordered that all sentences run concurrently. Brewer contends on appeal that there was insufficient evidence to sustain his conviction on four of the fraud charges (counts 1–4) [1] and secondly, argues that the government's opening statement and closing arguments, to which he raised no contemporaneous objection, were so prejudicial that the judge's failure to take curative action or grant a mistrial, *sua sponte*, constitutes

---

1. The parties have failed to discuss whether the concurrent sentence doctrine applies to this case. Because that doctrine is discretionary, *Benton v. Maryland*, 395 U.S. 784, 791, 89 S.Ct. 2056, 2060, 23 L.Ed.2d 707 (1969) and the issues raised by the appellant are relatively simple, we decline to apply the doctrine in this case. We would remind the parties, however, of their obligation to discuss the applicability of the doctrine in order to assist the court in determining whether an error raised by the appellant was harmless or whether collateral consequences such as a delay or denial of a future parole would result from the multiple convictions. *See, generally, United States v. Caldwell,* 776 F.2d 989, 1006 n. 21 (11th Cir.1985).

plain error.[2] For the reasons stated below, we affirm the judgment.

Brewer duped his victims by telling them that he had obtained an opportunity to invest money for them in a gold fund which was secretly maintained for and by general officers of the Marine Corps and which yielded a return of over twenty per cent on the investment every six months. The victim received no evidence of his investment which referred to a gold fund. Brewer insisted that any such reference in writing would reveal the existence of the fund to the public and destroy its profitability. Instead, Brewer gave each victim a promissory note. In fact, there was no gold fund and no funds were ever invested. If a victim demanded payment, Brewer would either pay him using money obtained from other investors or would suggest that he allow the money to remain in the fund in order to obtain a greater profit at a later date. Some investors received payment in full, with interest; others received partial returns; and some received nothing.[3]

On appeal, Brewer admits the fraud but argues that the letters introduced into evidence as to four of the counts (count 1–4) were insufficient to show that he committed *mail* fraud in violation of 18 U.S.C. § 1341.

■ The mailing alleged in count 1 was a lulling letter to a victim named Ettinger in which Brewer promised him that he would "pay" money that Ettinger had "loaned" to him "with interest". Brewer argues that this letter cannot support his conviction for mail fraud because the evidence shows that Ettinger also lent him money for reasons which were completely unconnected with the confidence scheme and the letter merely referred to those unconnected loans. We might find some credibility in this argument if it were not for the fact that the evidence shows that Brewer repeatedly re-

ferred to the victims' investments as "loans", issued promissory notes in exchange for the investment money and scrupulously avoided any recorded reference to the gold fund. Viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the evidence supports the inference that Brewer mailed the lulling letter in furtherance of his fraudulent receipt of money for investment in the gold fund. *See generally, United States v. Sawyer,* 799 F.2d 1494, 1501–02 (11th Cir.1986) and *United States v. Hewes,* 729 F.2d 1302, 1320–21 (11th Cir.1984) *cert. denied,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

■ Brewer asserts that the mailings of victims' demand letters alleged and proven with respect to counts 1–4 are insufficient to prove the two jurisdictional elements of mail fraud, *viz:* (1) the defendant "caused" the use of the mails and (2), the mails were used "for the purpose of executing the scheme." *Cf., United States v. Hewes,* 729 F.2d at 1320 (elements of mail fraud). On the basis of the former Fifth Circuit's opinion in *United States v. Georgalis,* 631 F.2d 1199 (5th Cir.1980) he argues that the demand letters cannot alone prove the jurisdictional elements because the letters neither further nor conceal the fraud and because they were neither requested nor desired by Brewer. *Georgalis* cannot be so broadly read. The section of that case which Brewer cites addresses a question of whether several counts of mail fraud could be prosecuted despite the fact that the underlying fraud had been committed outside the applicable five year period of limitation solely because the mailings alleged in the separate counts occurred within the period of limitations. *Id.* at 1204–06: The court recognized the principle that a letter mailed after the fruition of a

---

2. Brewer does not contend that the evidence was insufficient to support his conviction on either count 8 (mail fraud) or count 9 (transportation of securities). He was acquitted by the jury of count 7 and by the court of counts 5, 6 and 10.

3. Such an operation is known as a "Ponzi scheme". The Supreme Court's opinion in *Cunningham v. Brown,* 265 U.S. 1, 7–8, 44 S.Ct. 424, 425, 68 L.Ed. 873 (1924) is the source of the term.

fraud cannot be deemed to have been mailed for the purpose of executing a fraud, but nevertheless determined that those letters, which were "... designed either to allay suspicions, or to solicit further funds", were sufficient to bring the fraud within the statutory period. The court held however, that two letters, the first from a victim threatening legal action and a second letter from another victim recounting unkept promises were insufficient to extend the limitations period because they were not written "... in furtherance of the scheme to defraud." *Id.* at 1205. The *Georgalis* holding was dependent upon the facts of that case. The facts of this case dictate a contrary result. Intent under the mail fraud statute is proven if a reasonably minded jury can infer from the evidence that the defendant either acted with knowledge that the mails would follow in the ordinary course of business or that such use could be reasonably foreseen even though not actually intended. *Bank of America Nat'l. Trust and Sav. Ass'n. v. Touche, Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986) (civil RICO action based upon mail fraud). Brewer issued promissory notes in return for the victims' investments. Each note specified a due date and in at least one instance, the victim was informed that she could receive payment within 30 days of her demand for repayment. Although Brewer never specified how the notes would be presented for collection or how the 30 days notice would be given, the evidence was sufficient to show that use of the mails to collect the debts was foreseeable in the ordinary course of business. The jury could also infer that the letters were mailed in furtherance of the scheme which was designed so that the investors' early demands for repayment were delayed for a sufficient time to allow Brewer to repay them by using monies which were received as more and more victims later contributed to the bogus gold fund. *See, United States v. Becker*, 569 F.2d 951, 964 (5th Cir.) *cert. denied*, 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 and 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978). Consequently, we find that the evidence was sufficient to sustain the convictions on all counts challenged on appeal.

We find no merit in appellant's assertions that the court committed plain error in failing to take corrective action, *sua sponte*, when the prosecutor repeatedly referred to him as a "deadbeat" and when he once opined that, "There must be a special place in hell for anyone who can steal from the old ... the sick ... the poor and hide behind the Word of God." The use of the term "deadbeat" neither in and of itself nor in the context in which it was used by the prosecutor is so inflammatory as to constitute plain error. In both legal and common usage "deadbeat" does not imply criminality. A "deadbeat" is merely someone who fails to pay his debts. BLACK'S LAW DICTIONARY 79 (5th Ed. 1979). WEBSTER'S 3d NEW INTERNATIONAL DICTIONARY 579 (1966). The prosecutor on several occasions stated to the jury that he did not seek a conviction because Brewer was a "deadbeat" but because he had committed fraud. Consequently, although we might find the use of the term unnecessary and somewhat offensive to the ear, we cannot find that the court committed plain error because the prosecutor repeatedly stated a fact which was obvious and uncontradicted in the record: Brewer was a deadbeat. We do agree with Brewer that comments regarding "a special place in hell" were indeed uncalled for, potentially inflammatory and highly improper even though the evidence did support the prosecutor's statement that Brewer did in fact steal from the old, the sick and the poor and did invoke references to the Bible in writing his lulling letters. However, we cannot find plain error. In light of the overwhelming evidence of guilt there is no possibility that the prosecutor's remarks could have affected the jury's deliberation to the extent that a miscarriage of justice was the result. *See, United States v. Sawyer*, 799 F.2d at 1507 (11th Cir.1986).

AFFIRMED