**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Karen Irene Shores LEIGHT,
Defendant-Appellant.**

**No. 86–1274.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1986.

Decided May 5, 1987.

Rehearing and Rehearing En Banc
Denied July 9, 1987.

---

Rex L. Reu, Thomson, Weintraub & Thompson, Bloomington, Ill., for defendant-appellant.

Paul L. Kanter, Asst. U.S. Atty., Frances Hulin, U.S. Atty., U.S. Attorney's Office, Danville, Ill., for plaintiff-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*

CUDAHY, Circuit Judge.

A jury convicted defendant-appellant Karen Leight of murder in the second degree for causing the death of her infant son Daniel on a military reservation. Karen appeals the conviction on grounds that the district court improperly admitted "similar act" evidence, that the government destroyed significant evidence and that federal jurisdiction was not adequately proven. We affirm.

The jury in this case had to decide whether an infant, Daniel Leight, died as a result of abuse or of accidental causes. The medical evidence introduced at trial was complex and voluminous; some fifteen physicians testified. The government argued that Karen physically abused Daniel so severely as to cause his death. Karen argued that Daniel's injuries and death derived from trauma caused by a difficult birth. The jury concluded that, beyond a reasonable doubt, Karen murdered Daniel. On appeal, Karen urges three grounds on which the verdict should be overturned.

First, Karen suggests that the verdict is a result of improper and prejudicial "similar act" evidence. As frequently occurs in child abuse cases, where there is no direct evidence of the cause of injury or death, the government presented extensive evidence suggesting that Daniel's injuries were not accidental. This included evidence of injuries suffered by Karen's two other children, Kevin and Christopher. Karen contends that this evidence improperly turned the trial into an attack on her character and resulted in a guilty verdict based on a showing of propensity. The government argues that the evidence concerning Kevin and Christopher was relevant and was essential in showing the absence of an accidental cause for Daniel's death.

Second, Karen contends that the prosecutor destroyed a critical piece of evidence—the original negative of an x-ray taken of Daniel's skull on January 14, 1983. Although there is nothing to suggest that the destruction of the original occurred in bad faith, Karen urges that this x-ray was critical to determining whether Daniel suffered two separate skull fractures or one branching fracture. Hence, the destruction of the original mandated a mistrial. The government responds that diagnostic-quality copies existed, and that nothing suggested that the copies were inaccurate.

Third, Karen argues that the evidence was insufficient to establish that any murder took place on federal property. Unless the evidence could permit a rational jury to find beyond a reasonable doubt that Daniel was killed on federal land, an element of the crime is unproven and a guilty verdict cannot stand. Because no witnesses testified of their own knowledge when or where Daniel's injuries occurred, it was only speculation, according to Karen, that the injuries occurred on federal land. The government argues that there is sufficient circumstantial evidence to permit a jury to conclude beyond a reasonable doubt that Karen abused Daniel at their home on Chanute Air Force Base.

None of these contentions warrants a reversal. We agree that an unusual

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

amount of similar act evidence was introduced at trial. Recognizing, however, that the district court employed the proper legal standard and that child abuse cases pose unique problems of proof, we conclude that the district court did not err in admitting this evidence pursuant to Federal Rule of Evidence 404(b).[1] We also regret that in a difficult case like this the prosecutor, whether carelessly or ignorantly, destroyed an original x-ray. But again we cannot conclude that the district court abused its discretion in finding diagnostic-quality copies admissible. And finally, we agree that sufficient evidence supports the jury's implicit finding that the murder took place on federal property.

## I.

Gary and Karen Leight's third child, Daniel Leight, was born on December 14, 1982, at Chanute Air Force Base Hospital near Rantoul, Illinois. After three days in the hospital Daniel and Karen were released and went home. Two-and-a-half weeks later, on January 3, 1983, Daniel was readmitted to the hospital with a skull fracture. The examining physician considered the fracture to be consistent with birth trauma rather than child abuse. Over the next three weeks Daniel suffered some swelling of his head, but the treating physician felt Daniel was progressing satisfactorily. On February 1, however, Daniel was taken to the base hospital suffering from a seizure. Daniel spent most of the next four weeks in three hospitals undergoing tests and treatment. He suffered repeated seizures, and a new fracture of the skull was identified. Doctors disagreed on whether the newly discovered fracture was a pre-existing tributary fracture or a separate and distinct injury.

Between February 25 and March 22 Daniel remained on anti-convulsant medication and saw his doctor twice a week. Seizures reportedly continued but the treating physi-cians felt Daniel was making progress. On March 22, however, Daniel suffered a full cardio-respiratory arrest. He was revived at the Chanute emergency room but died on March 25, 1983, at the Carle Clinic in Urbana, Illinois.

Kevin Leight, Karen and Gary's second child, was born before Daniel on November 9, 1980, also at the Chanute Air Force Base. On December 15, 1980 Kevin was hospitalized for possible seizures; a CAT scan revealed bleeding within Kevin's brain. Karen reported that a few days earlier Kevin must have struck his head on a tile floor after a family pet knocked over his bassinet. Kevin was released from the hospital on December 26. By January 10, 1981, however, Kevin was readmitted to the hospital because of seizures. Surgery was performed to drain excess fluid from Kevin's brain, and x-rays and CAT scans revealed a skull fracture and new areas of bleeding within the brain. After four weeks of hospitalization Kevin was stabilized and then discharged on February 8.

On February 18, Kevin received emergency treatment for vomiting but was not admitted to the hospital. Late that evening, while Karen was sitting up with Kevin, he suffered a full cardiac arrest. Kevin was pronounced dead on February 19, 1981.

Christopher Leight, Gary and Karen's first child, was born on June 28, 1979, in Washington, D.C. Christopher was hospitalized between November 18 and December 23, 1979, suffering from redness and blisters on his face together with some bruises on his body. Karen reported that Christopher developed the redness and blisters shortly after she fed him some barley cereal and wiped his face clean with a washrag. A treating physician, however, diagnosed Christopher as suffering from a thermal burn, not any allergic reaction.

**1.** Rule 404(b) provides:
(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Fed.R.Evid. 404(b).

Apparently no follow-up tests were done to confirm the cause of Christopher's injuries.

On July 10, 1985, a federal grand jury returned an indictment charging Karen Leight with two counts of first degree murder for killing her children Kevin and Daniel on federal lands.[2] Pursuant to Karen's pre-trial motion, the district court severed the two counts because of the inherent prejudice that would result from trying the counts together. *See* Fed.R.Crim.P. 14. The government chose to proceed on the count charging that Karen murdered Daniel. On December 1, 1985, a jury was selected, and testimony began on December 3.

During the trial the district court held a hearing outside the presence of the jury, pursuant to Federal Rule of Evidence 104, to determine whether evidence of Karen's alleged abuse of her other children, Kevin and Christopher, was admissible in the government's case-in-chief. The court ruled that the evidence was admissible under Rule 404(b).

The government introduced evidence from three expert witnesses that Daniel suffered physical abuse that caused his death. In addition, other doctors testified that Daniel suffered at least two separate traumatic injuries to his head after he was born. The government introduced evidence from two experts who testified that Kevin died as a result of repeated child abuse. The government also introduced expert testimony that Christopher suffered child abuse. Finally, testimony from some neighbors and acquaintances of Karen suggested that Karen's infant children displayed bruises and scratches and that Karen handled them roughly at times.

On December 17, 1985, the jury returned a verdict finding Karen guilty of murder in the second degree, and on February 14, 1986, Karen was sentenced to life imprisonment.

**II.**

### A. Rule 404(b) Challenges

If evidentiary rules were ranked in accordance with the controversy they engender, Rule 404(b) would stand near the top. Courts and litigants struggle continually to set boundaries for the Rule which give scope for its legitimate purposes while avoiding irrelevant disclosures of defendants' closet skeletons and past pecadillos.

Undoubtedly, Rule 404(b) plays a crucial role in determining when and what "similar act" evidence is admissible for limited purposes, but courts must guard against over-inclusive interpretations, *see, e.g., United States v. Chaimson,* 760 F.2d 798, 813 (7th Cir.1985) (Cudahy, J., concurring) (court must ensure that similar act evidence introduced to show "intent" is in fact introduced for that purpose, not to flood courtroom with other-crimes evidence); *United States v. Draiman,* 784 F.2d 248, 254 (7th Cir. 1986). In this difficult case it is particularly important to guard against the application of improper standards.

In child abuse prosecutions, there are usually no eyewitnesses to identify the source of the injuries. Rather, such prosecutions are commonly built upon circumstantial evidence showing a pattern of repeated injuries suggesting child abuse. Often, as here, the defendant challenges the circumstantial evidence by arguing that the injuries were caused accidentally. In response to such a defense, Rule 404(b) can permit the admission of evidence of "other crimes, wrongs, or acts" to show the "absence of mistake or accident." *See* Fed.R. Evid. 404(b); *cf. United States v. Woods,* 484 F.2d 127, 134 (4th Cir.1973) (evidence of other wrongs, admitted in child abuse prosecution, "may have been admissible under the lack of accident exception, although ordinarily that exception is invoked only where an accused admits that he did the acts charged but denies the intent necessary to constitute a crime, or contends that he did the acts accidentally"), *cert. denied,*

---

**2.** Murder on federal lands is a federal crime. The federal criminal code defines "special maritime and territorial jurisdiction of the United States," *see* 18 U.S.C. § 7(3), and "murder" in such a jurisdiction, *see* 18 U.S.C. § 1111, and it establishes jurisdiction in federal district courts, *see* 18 U.S.C. § 3231.

415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974). Of course, in deciding whether or not to admit evidence of a particular event, the district court must exercise its discretion to balance the relevance of and need for the evidence against the inevitable prejudice it creates—and specifically against the inflammatory consequences of presenting it to the jury.

This circuit has outlined a four-step test for the admissibility of 404(b) evidence. Evidence of other acts is admissible if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984); *accord United States v. Draiman,* 784 F.2d 248, 254 (7th Cir.1986); *United States v. Arnold,* 773 F.2d 823, 832 (7th Cir.1985); *United States v. Chaimson,* 760 F.2d 798, 804 (7th Cir. 1985).

We have also outlined a three-step inquiry to guide a decision on the admissibility of 404(b) evidence. Evidence of uncharged misconduct is admissible if:

> (1) it fits within an exception recognized by Rule 404(b) ..., (2) its probative value outweighs its prejudicial effects, and (3) the misconduct is proved by clear and convincing evidence.

*United States v. Byrd,* 771 F.2d 215, 220 (7th Cir.1985); *accord United States v. Ostrowsky,* 501 F.2d 318, 321 (7th Cir.1974).

And we have insisted that the proper approach emphasizes balancing. Recently we cautioned that in undertaking an analysis of proposed 404(b) evidence, the district court must not apply 404(b) standards mechanically, lest the exceptions listed in the rule "overwhelm the central principle." *United States v. Beasley,* 809 F.2d 1273, 1279 (7th Cir.1987). In *Beasley* we reversed a conviction because of improper admission of 404(b) evidence, and stated:

> [T]here must be a principled exercise of discretion. The district judge must both identify the exception that applies to the evidence in question and evaluate whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character.

*Id.*

 Whether we use a four-part or a three-part test, we agree that the district court's role is to undertake a principled exercise of discretion. In evaluating proposed "other act" evidence, this entails ensuring that the evidence adequately fits a 404(b) category, that the evidence is clear and convincing and that its probative value outweighs the risk of unfair prejudice. In the present case the district court undertook a careful and exhaustive analysis of these factors before admitting the 404(b) evidence, and the court did not abuse its discretion in admitting the evidence.[3]

---

**3.** In analyzing the admissibility of the 404(b) evidence, the district court here, borrowing from commentary on Rule 404(b), outlined its own analysis as focusing on:
> (1) need for the evidence; (2) strength of the other act evidence; (3) persuasiveness or probative worth; and (4) risk of prejudice.

*United States v. Leight,* No. 85–20030, order at 3 (C.D.Ill. Dec. 11, 1985) (citing Louisell & Mueller, *Federal Evidence,* § 140 (1985)). In carrying out this analysis the district court properly weighed the relevant factors we have mentioned. We are hesitant, however, to adopt this formulation of the 404(b) analysis, despite its use by the district court and apparent accept-

ance by both parties. Specifically, it seems inappropriate to single out the need for the evidence as a separate factor. Certainly the need for the evidence—presumably encompassing the question whether the evidence is cumulative or not—is *relevant* in evaluating the ultimate balance of probative value versus unfair prejudice. But it seems incorrect to suggest, for example, that the greater the need for the evidence, the more likely it will be admissible. In a case where the 404(b) evidence is central to the government's proof, *both* the probative value and the threat of unfair prejudice are increased—the stakes are higher. This factor must be encompassed in the district court's

As a preliminary matter, we note that the district court initially severed the two murder counts of the indictment, commenting that a trial on both counts together would cause obvious prejudice and create too much risk that the jury would confuse the two events. Karen contends that this severance (and the court's parallel preliminary refusal to declare the 404(b) evidence admissible at the outset of the trial) reveals that the 404(b) evidence was inherently prejudicial and had to be kept from the jury. However, Karen concedes that the district court, when it eventually admitted the 404(b) evidence, did articulate the proper legal standard. *See* Leight Brief at 22. The facts that the court severed the two counts of the indictment and once declined to admit the 404(b) evidence do not render improper a later decision to admit the same evidence. The importance of the evidence, its effect on the jury and the relevance to the actual issues in contest, all are factors that were sharpened and focused as the trial proceeded. As long as the court applied the proper standards and engaged in a "principled exercise of discretion," a change in position is in itself not error.

The district court determined that evidence of Karen's abuse of Kevin and Christopher was admissible under Rule 404(b) as evidence to show malice, knowledge and absence of accident. The critical issue in this criminal prosecution was whether Daniel died as a result of injuries deriving from a difficult birth or from physical abuse inflicted by Karen. Because of the difficulties commonly encountered in showing that a child has been abused, courts have often treated evidence of abuse of other children as relevant and admissible. *See, e.g., United States v. Fesler,* 781 F.2d 384 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 1977, 90 L.Ed.2d 661 (1986); *United States v. Harris,* 661 F.2d 138 (10th Cir.1981); *United States v. Colvin,* 614 F.2d 44 (5th Cir.), *cert. denied,* 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 802 (1980); *United States v.*

*Woods,* 484 F.2d 127; *Vansickle v. Arkansas,* 16 Ark.App. 143, 698 S.W.2d 308 (1985); *People v. Milner,* 123 Ill.App.3d 656, 79 Ill.Dec. 10, 463 N.E.2d 128 (3d Dist.1984); *Nasim v. Maryland,* 34 Md. App. 65, 366 A.2d 70 (1976), *cert. denied,* 434 U.S. 868, 98 S.Ct. 209, 54 L.Ed.2d 146 (1977); *State v. Ohnstad,* 359 N.W.2d 827 (N.D.1984); *South Dakota v. Holland,* 346 N.W.2d 302 (S.D.1984); *State v. Hieb,* 39 Wash.App. 273, 693 P.2d 145 (1984), *rev'd on other grounds,* 107 Wash.2d 97, 727 P.2d 239 (1986); *Grabill v. Wyoming,* 621 P.2d 802 (Wyo.1980). In the present case Karen based her defense on the theory that Daniel's injuries and death were accidental. In these circumstances the evidence that Karen physically abused other children in her care—Kevin and Christopher—is generally relevant to the contested issue.

Of course, this does not end our inquiry. The district court determined that the evidence that Karen abused Kevin and Christopher was "clear and convincing" evidence. Karen urges that this finding must be reversed because the district court, in conducting its Rule 104 hearing to evaluate the proposed evidence, did not permit her to present witnesses and contrary evidence to dispute the government's evidence. Without such a full hearing, Karen contends, the district court could not properly determine whether the proposed evidence was clear and convincing.

We see general merit in Karen's arguments that, in a close case like this one, a finding that evidence is clear and convincing should normally be made only after considering evidence from both parties. But we cannot conclude that the district court abused its discretion in finding that the evidence was clear and convincing that Karen abused both Kevin and Christopher. The district court heard two days of testimony from more than a dozen witnesses during the Rule 104 hearing. These witnesses were subject to full and vigorous cross-examination. After this testimony

---

overall balancing, but we do not believe that the need for the evidence should stand as a distinct factor in the analysis. Indeed, in such an analysis, a party challenging the 404(b) evidence

might find itself having to argue the difficult position that the case against it was so overwhelming that the evidence should have been ruled out.

the court heard oral argument from both counsel, including an outline by Karen's counsel of the evidence that he could offer to challenge a finding of "clear and convincing" by the court. The court undertook a detailed analysis of the relevant law and summarized the testimony on which it relied. The court was fully aware of what testimony Karen intended to introduce in opposition to the government's evidence relating to Kevin and Christopher. In light of this careful consideration, the court concluded that the evidence presented at the 104 hearing was sufficient to establish that Karen fatally abused Kevin and abused Christopher.

■ The district judge bears the responsibility to evaluate the proffered evidence and conclude whether or not it is clear and convincing. *See, e.g., United States v. Tomasian,* 784 F.2d 782, 785 (7th Cir.1986); *United States v. Liefer,* 778 F.2d 1236, 1240–44 (7th Cir.1985); *United States v. Byrd,* 771 F.2d 215, 222 n. 4 (7th Cir.1985). *Contra United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) *(en banc)* (giving the jury responsibility to decide whether evidence is clear and convincing), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). It is not settled what the judge must do specifically in this evaluation. Karen suggests that because the evidence regarding Kevin and Christopher was in dispute, it was "incumbent upon the district court to hear all of the evidence prior to ruling on its admissibility." Leight Brief at 26. But we decline to hold that every Rule 104 hearing must be a full-blown trial in which both sides may present every available piece of evidence.

Rather, the determination of what constitutes "clear and convincing" evidence must lie within the discretion of the trial court. And this principle permits the court to decide what and how much evidence is necessary for this determination. *See United States v. Draiman,* 784 F.2d 248 (7th Cir. 1986) (testimony of one witness was suffi-

ciently clear and convincing to allow admission of evidence); *United States v. Hyman,* 741 F.2d 906, 912–13 (7th Cir.1984) ("direct, unimpeached testimony of a witness constitutes clear and convincing evidence"); *cf. United States v. Andrus,* 775 F.2d 825, 837 (7th Cir.1985) (describing admissibility standards for co-conspirator statements); *United States v. Foskey,* 636 F.2d 517, 526 n. 8 (D.C.Cir.1980) (suggesting pre-trial proffer of evidence to justify admission of 404(b) evidence). In the present case, the district court heard two days of testimony including cross-examination. While some judges may have chosen, in a case pitting medical expert against medical expert, to permit both sides to present witnesses, in the present circumstances it was not an abuse of discretion to decline to conduct a full trial within a trial.

The final task a district court must perform when passing on proposed 404(b) evidence—after finding that the evidence fits a 404(b) category and is clear and convincing—is to weigh the probative value of the evidence against its unfair prejudice. This inquiry essentially parallels a Rule 403 analysis.[4] District courts have considerable discretion in undertaking this sort of 403 balancing. *See, e.g., United States v. Liefer,* 778 F.2d 1236, 1244 (7th Cir.1985). We simply note here that child abuse cases present very unusual problems of proof. The circumstances of these cases suggest an even wider discretion than usual in admitting what·is conceded to be extremely prejudicial evidence, consisting of other acts of abuse carried out against other children. *See United States v. Woods,* 484 F.2d at 133. The district court recognized the proper inquiry and carefully considered the relevant factors. It was not an abuse of discretion to conclude that the probative value of earlier acts of child abuse outweighed the unfair prejudice of showing uncharged wrongs—even of a reprehensible character.

---

4. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.

## B. Destruction of Evidence

The government attempted to erase some grease-pencil marks from x-ray film taken of Daniel on January 14, 1983. In the process the government erased the emulsion off the film, completely obliterating the relevant part of the x-ray. This x-ray was at the crux of the dispute about whether Daniel suffered a second separate skull fracture or, instead, a branching fracture deriving from a single earlier injury. Karen contends that this destruction of evidence mandates a mistrial because this pivotal issue—one injury or two—was forever obscured by the government's conduct.

■ It is regrettable, perhaps inexcusable, that the government destroyed the x-ray. But several diagnostic-quality copies of the x-ray existed, and they were introduced at trial. Karen has suggested that some anomaly in the original film or some aberration in a copy may have affected the quality of the copies used at trial. There are several reasons why Karen cannot prevail on this point.

First, Federal Rule of Evidence 1001 states that an x-ray is a "photograph" for evidentiary purposes and that an " 'original' of a photograph includes the negative or any print therefrom." Fed.R.Evid. 1001. It may well be that a diagnostic-quality copy of x-ray film, therefore, is an "original" for purposes of evidence law.

Second, even if the x-ray copy is not an "original" but rather a "duplicate," Federal Rule of Evidence 1003 deems a duplicate admissible to the same extent as the original unless "a genuine question is raised as to the authenticity of the original or ... [unless] it would be unfair." Fed.R.Evid. 1003. The opponent of the evidence bears the burden of showing that a genuine issue exists as to its authenticity. *See United States v. Garmany*, 762 F.2d 929, 938 (11th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 811, 88 L.Ed.2d 785 (1986); *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir.1980). Karen offers only speculation that some relevant difference might exist between the original and the copies of the x-ray film. This is not a sufficient showing of a genuine issue as to authenticity or unfairness. *Cf. United States v. Georgalis*, 631 F.2d at 1205; 11 J. Moore Federal Practice § 1003.02 (2d ed. 1976).

■ Finally, Karen overemphasizes this single x-ray in characterizing it as "pivotal" to the government's case. The expert medical testimony was based on extensive records revealing multiple injuries separated in space and time. Even if the district court erred in admitting the copies of the January 14 x-ray, the error was harmless.

## C. Federal Jurisdiction

■ Karen argues that there was insufficient evidence for the jury to conclude beyond a reasonable doubt that "the act or acts which caused the death of Daniel Leight were committed on Chanute Air Force Base," as instructed by the court. Karen is correct that an element of the offense charged is its commission on a military reservation; this must be proven beyond a reasonable doubt. *See* 18 U.S.C. §§ 1111, 3236; *United States v. Parker*, 622 F.2d 298 (8th Cir.1980). But there was sufficient circumstantial evidence to permit the jury to reach the required conclusion. The jury found that Karen caused Daniel's death. The evidence suggested that the injuries occurred when Karen and Daniel were alone together, and that Karen and Daniel never left the base unaccompanied by others.

## III.

We conclude that the district court properly could admit into evidence testimony that Karen fatally abused Kevin and abused Christopher. And it could admit copies of the January 14 x-ray. Because, in addition, sufficient evidence supported the jury's conclusion that Daniel's death was brought about on federal property, the judgment of the district court is

AFFIRMED.