[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14586
Non-Argument Calendar

_____

D.C. Docket No. 6:12-cr-00232-ACC-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LINDA S. DEAVERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 9, 2015)

Before HULL, MARCUS and ROSENBAUM, Circuit Judges.

PER CURIAM:

A jury convicted Linda Deavers of ten counts of wire fraud, in violation of

18 U.S.C. § 1343, and five counts of money laundering, in violation of 18 U.S.C. §

1957. Deavers now appeals the denial of her motion for judgment of acquittal on

four of the wire-fraud counts -- Counts 1-4 -- that charged Deavers with causing broker Kyle Wilson to transmit to his clients emails containing misrepresentations about the status of his clients' investments with her.  On appeal, Deavers argues that: (1) the testimony of Wilson and his business associate, Robert Carr, established that she did not transmit the emails at issue, she did not ask for them to be transmitted, she did not know about them, and she would not have approved of them because of her confidentiality agreement with Wilson and Carr; and (2) Wilson's emails were not an essential part of her scheme, and, she cannot be held liable for his conduct.  After thorough review, we affirm.

We review the denial of a defendant's motion for judgment of acquittal de novo.  United States v. Perez-Tosta, 36 F.3d 1552, 1556 (11th Cir. 1994).  The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime of which she is charged.  In re Winship, 397 U.S. 358, 364 (1970).  However, to uphold the denial of a motion for judgment of acquittal, we need only determine that a reasonable jury could conclude that the evidence established guilt beyond a reasonable doubt.  United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001).  The jury is free to choose among reasonable constructions of the evidence.  United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983).  Accordingly, we accept all reasonable

2

inferences that tend to support the government's case.  See United States v. Williams, 390 F.3d 1319, 1324 (11th Cir. 2004).

The federal wire-fraud statute provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.  Thus, the elements of wire fraud under § 1343 are "(1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme."  United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003).  As for the second element, we've said:  "To 'cause' the interstate wires to be used, the use of the wires need not be actually intended; it need only be reasonably foreseeable."  Id.  We've also noted that:  "Where one does an act with knowledge that the use of the interstate wires will follow in the ordinary course of business . . . then he 'causes' the interstate wires to be used."  United States v. Ross, 131 F.3d 970, 985 (11th Cir. 1997) (quoting Pereira v. United States, 347 U.S. 1, 8-9 (1954)) (quotation and alterations omitted).

Our precedent instructs that a defendant may be held liable for a communication transmitted by a victim of her fraud, if the communication furthered the defendant's fraudulent scheme.  See United States v. Toney, 598 F.2d

3

1349, 1353 (5th Cir. 1979).[1]  Moreover, communications designed to conceal a fraud by lulling a victim into inaction may constitute communications made in furtherance of the scheme.  See United States v. Georgalis, 631 F.2d 1199, 1204 (5th Cir. 1980).

The government's evidence in this case showed that:  (1) Wilson entrusted several million dollars of his clients' money to Deavers for investment in purported European private placement programs; (2) Wilson traveled to Europe with Deavers to facilitate his clients' investments in these programs; (3) Carr later took Wilson's place and remained in Europe with Deavers for several months; (4) Wilson sent regular email updates to his investors about the status of the private-placement-program investments, which he based on information he and Carr learned in their conversations with Deavers; (5) Deavers knew Wilson was under pressure from his clients to see returns on their investments; (6) Deavers knew Wilson was in regular contact with his investors; and (7) Deavers never invested the funds in private-placement programs, but used a significant portion of them for her personal benefit.  Further, the evidence indicated that the information in Wilson's emails, which reported imminent contracts with partners in private-placement programs, with returns to follow shortly, was, at a minimum, misleading, if not outright false.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

From this evidence, the jury reasonably could have found that, even if Deavers did not instruct Wilson to relay the misinformation she provided about the investments to his clients, she reasonably could have foreseen that he would do so. Deavers's claim that the emails were in violation of the confidentiality agreement she had with Wilson and Carr is contradicted by both Wilson's and Carr's testimony that the emails were general enough that they did not breach the confidentiality agreement.  In addition, while Wilson testified that Deavers may not have known that he communicated with his clients by email, the jury reasonably could have found that, at the relevant time period -- October 2007 through January 2008 -- Wilson's use of email to communicate with his clients was reasonably foreseeable to Deavers.

As for Deavers's argument that the wire-fraud statute requires the specific intent to use the interstate wires, it is contrary to our precedent. See Hasson, 333 F.3d at 1270; Ross, 131 F.3d at 985; United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008) (noting that we are bound to apply our prior precedent unless and until it is overruled by the Supreme Court or this Court sitting en banc). Deavers's claim that Wilson's emails were not sent in furtherance of her fraudulent scheme is also unavailing.  The jury reasonably could have concluded that Deavers's misrepresentations to Wilson and Carr, which were reflected in the charged emails, were designed to conceal her fraudulent conduct and to prevent

Wilson's clients from demanding the return of their funds.  See Georgalis, 631 F.2d at 1204.  Because Deavers caused Wilson's emails, and they furthered her fraudulent scheme, it matters not that Wilson was a victim of the fraud, and not a coconspirator.  See Toney, 598 F.2d at 1353.[2]

**AFFIRMED**.

---

[2] In her brief, Deavers argues in passing, and for the first time on appeal, that the interstate-use-of-the-wires element was not satisfied because she was unaware that Wilson had out-of-state investors, or that his email updates would involve interstate commerce.  Deavers has failed to properly raise this claim as an issue on appeal, however, since she has not offered any argument or cited any legal authorities in support of it.  See Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1319 (11th Cir. 2012) (noting that a passing reference to an issue, without further argument and citation to authorities, constitutes a waiver of the issue). In any event, we are unpersuaded by her argument.