[No. 13327-6-I.  Division One.  December 24, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. PETER JACOB HIEB III, *Appellant.*

*Kim Wakefield* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca J. Roe* and *Deborah J. Phillips, Deputies,* for respondent.

RINGOLD, J.—Peter Hieb appeals the judgment and sentence imposed after a jury convicted him of second degree murder, RCW 9A.32.050(1)(a), (b). The principal issues on appeal concern the evidentiary and constitutional propriety of admitting hearsay statements of a person not called as a witness at trial. Hieb also challenges the admission of evidence of prior injuries to the victim. We conclude that some of the hearsay statements were inadmissible under the Rules of Evidence and that admitting the statements violated Hieb's constitutional right to confront the witnesses against him. Accordingly, we reverse and remand for a new trial.

On December 13, 1982, 20–month–old Addy Kay Turner died. The medical examiner attributed her death to a brain hemorrhage caused by violent shaking or a blow to the head inflicted 3 to 5 days earlier.

Three months prior to her death, Addy Kay, her mother, and her 3–year–old sister, Shawna, began living with the defendant, Peter Hieb. It was the State's theory that Hieb inflicted the fatal injuries on the night of December 9, when he was alone with the children. The morning of December 11, Hieb awakened Addy Kay's mother and told her the child had stopped breathing. The medics were called. Before they arrived, Hieb replaced Addy Kay's pillow with one from another room. Bloodstains were later found on Addy Kay's pillowcase. Police and medics responded to the call and revived Addy Kay. She was taken to the hospital, where she died 2 days later.

The morning Addy Kay was taken to the hospital, Shawna was brought to the home of a police officer. A King County deputy prosecutor[1] interviewed Shawna that afternoon. Shawna did not testify at trial. The prosecutor who

---

[1] At the time of trial, this person was no longer employed by the prosecutor's office.

had interviewed her testified, over defense objections, to statements Shawna had made about her sister, her mother and the defendant.

The prosecutor described Shawna as fearful, wary and agitated during the interview. She stated that she asked Shawna whether Addy Kay lived at her house and that Shawna responded:

"Addy Kay is dead. Peter did this," and made hitting motions to her abdomen. "He put a pillow on her face."

The prosecutor further testified:

And then I asked her, "Did Peter ever hurt you?" And she said, "No, I am good," with kind of a smile on her face.

And then I said, "Did he hurt Addy Kay?" and she said, "All the time."

I asked her, "Does your mommy hurt you too? Does your mommy ever hurt you?" And she said, "No."

I said, "Does your mommy hurt Addy Kay?" And she said, "No."

I was aware that Addy Kay had had a broken arm, her arm had been casted. So I said, "Well, Addy Kay had a broken arm, didn't she?" Before I could get the question out—I sort of got to "broken arm"—she interrupted me and said, "Peter did that."

Several witnesses testified, over defense objections, that both Addy Kay and Shawna began suffering injuries shortly after they began living with Hieb. At the time these injuries occurred, Hieb stated they were accidental.

The medical examiner testified that Addy Kay had numerous bruises and fractures which were several days to several weeks old, and opined that the number and severity of injuries indicated child abuse.

The jury found Hieb guilty of second degree murder, and this appeal follows.

### Admission of Shawna's Statements

Hieb first challenges the admission of the prosecutor's testimony relating the above quoted statements made by Shawna. Hieb contends that Shawna's statements were inadmissible hearsay and that admitting Shawna's state-

ments without requiring the State to call her as a witness violated his constitutional right to confront adverse witnesses.

## 1. Hearsay

The trial court admitted Shawna's statements under the present sense impression and excited utterance exceptions to the hearsay rule. ER 803(a) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (1) *Present Sense Impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
>
> (2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

■ These discrete exceptions are based on the common law res gestae exception to the hearsay rule set forth in *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939).

> (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

*Beck v. Dye,* at 9–10. Although ER 803(a)(1) and (2) are less restrictive than the common law exception recognized

in *Beck,* we must interpret them in a sufficiently restrictive manner as to prevent their application where the factors guaranteeing trustworthiness are not present. *State v. Dixon,* 37 Wn. App. 867, 873, 684 P.2d 725 (1984).

The admissibility of a statement of a present sense impression is based upon the assumption that its contemporaneous nature precludes misrepresentation or conscious fabrication by the declarant. *See* 5A K. Tegland, Wash. Prac., *Evidence,* at 205 (2d ed. 1982). The rule requires that the statement be made while the declarant was perceiving the event, or immediately thereafter. The events Shawna described occurred at least several hours before the interview took place. This time interval is too long to meet the requirements of ER 803(a)(1). Shawna's statements were not admissible as present sense impressions.

■ The excited utterance exception is broader than that for present sense impressions. The principal elements of an excited utterance are a startling event and a spontaneous declaration caused by that event. K. Tegland, at 206–07. Unlike a statement of present sense impression, an excited utterance need not be contemporaneous to the event. Nor must the statement be completely spontaneous; responses to questions may be admissible. *State v. Downey,* 27 Wn. App. 857, 861, 620 P.2d 539 (1980).

> The crucial question in all cases is whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.

*Johnston v. Ohls,* 76 Wn.2d 398, 406, 457 P.2d 194 (1969).

The evidence established that Hieb moved Addy Kay's bloodstained pillow after the medics were summoned. From this evidence, it is reasonable to infer that Shawna's statement about Peter hitting Addy Kay in the abdomen and putting a pillow on her face described events which occurred relatively close in time to Shawna's statement. Considering Shawna's tender age and the absence of evidence as to intervening influences, the possibility that she

fabricated the related facts is remote. Accordingly, this statement was properly admitted as an excited utterance pursuant to ER 803(a)(2).

The same cannot be said of Shawna's statements regarding the past treatment of the children by Peter and her mother and the cause of Addy Kay's broken arm. The statements as to the overall treatment of the children related to events spanning a period of several months. The statement concerning the broken arm described an event occurring 2 months earlier. Thus, the statements were too remote in time from the alleged events to qualify as excited utterances. Only Shawna's first statement was properly admitted at trial.

## 2. Right of Confrontation

Hieb next contends that admitting Shawna's statements violated his right of confrontation guaranteed by the sixth amendment to the United States Constitution[2] and article 1, section 22 (amendment 10) of the Washington Constitution.[3] Although Hieb did not present this argument to the trial court, we address it for the first time on appeal because it raises a constitutional claim. *State v. McCullum*, 98 Wn.2d 484, 487, 656 P.2d 1064 (1983).

The Sixth Amendment guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974).[4] The essential purpose of this right is to secure for the accused the opportunity of cross

---

[2]U.S. Const. amend. 6 provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[3]Const. art. 1, § 22 (amend. 10) provides in part: "In criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face . . . ."

[4]Although Const. art. 1, § 22 (amend. 10) is worded differently than U.S. Const. amend. 6 and arguably gives broader protection than the Sixth Amendment, *see State v. Parris*, 98 Wn.2d 140, 154, 654 P.2d 77 (1982) (Williams, J., dissenting), our appellate courts have not differentiated between these provisions.

examination, so that he may test the perception, memory, credibility, and narrative powers of the witnesses. *State v. Parris,* 98 Wn.2d 140, 144, 654 P.2d 77 (1982).

The State contends that Hieb's right of confrontation was not violated for two reasons: (1) that confrontation was not required because Shawna's statements qualified as an exception to the hearsay rule and, thus, were inherently reliable; and (2) that the right was not abridged because Shawna was available to be called as a witness by Hieb.

The relationship between hearsay and the confrontation clause is discussed in *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970).

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception.

*Green,* 399 U.S. at 155-56. The fact that part of Shawna's statement was admissible under a recognized hearsay exception is not dispositive of Hieb's constitutional claim.

██ Though the confrontation clause has never been interpreted as an absolute bar to hearsay, it operates to restrict the range of admissible hearsay in two ways:

> First, in conformance with the Framers' preference for face–to–face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case . . . the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.

*Ohio v. Roberts,* 448 U.S. 56, 65, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). Second, if the witness is unavailable, the statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more where

the evidence falls within a recognized exception to the hearsay rule. *Roberts,* 448 U.S. at 66.

The first requirement was not satisfied here because the State neither produced the witness, *i.e.,* called her to testify, nor demonstrated her unavailability.[5] The State apparently argues that this requirement is inapplicable because Shawna was at all times available and could have been called as a witness by Hieb. This argument overlooks the fact that the prosecution bears the burden of producing the witness whose hearsay statements it wishes to utilize. *See Roberts,* at 65, 74–75. There is no requirement on a defendant to offer any testimony on his behalf.

Nor did the State demonstrate that Shawna was unavailable. A witness is "unavailable" for purposes of the Sixth Amendment where he does not testify despite the prosecution's good faith efforts to locate and present him. The prosecution bears the burden of establishing this predicate. *Roberts,* at 74–75. The State did not call Shawna as a witness because "of concern that she had been improperly influenced by her grandparents with whom she had been residing during the time between the murder and the trial." Brief of Respondent, at 6. This explanation does not meet the constitutional standard of unavailability.

We also note that the State does not contend that Shawna was "unavailable" because her age rendered her incompetent to testify. Even were the State to raise this argument, this court could not decide whether Shawna was unavailable due to incompetency. Children are incompetent to testify if they "do not have the capacity of receiving just impressions of the facts about which they are examined or . . . do not have the capacity of relating them truly." CrR 6.12(c); *see also State v. Allen,* 70 Wn.2d 690, 424 P.2d 1021 (1967). Whether a child witness is competent to testify is a discretionary determination to be made by the trial court after examining the child. *State v. Woodward,* 32 Wn.

---

[5]The indicia of reliability requirement was met only with respect to that portion of Shawna's statement which fell within the excited utterance exception.

App. 204, 208, 646 P.2d 135 (1982).

██ Admitting Shawna's statement without requiring the State to either call her as a witness or prove she was unavailable as a witness violated Hieb's right of confrontation. The error requires automatic reversal, *Bagley v. Lumpkin*, 719 F.2d 1462, 1464 (9th Cir. 1983), because the denial of this right is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Davis v. Alaska*, 415 U.S. at 318.

### EVIDENCE OF PRIOR INJURIES

Because the issue will arise again on retrial, we must also address Hieb's contention that the court erred in admitting evidence of prior injuries to Addy Kay and Shawna.

The governing rule is ER 404(b):

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

██ Before evidence of prior crimes, wrongs, or acts can be admitted, two criteria must be met. First, the evidence must be shown to be logically relevant to a material issue before the jury. The test is "'whether the evidence . . . is relevant and necessary to prove an essential ingredient of the crime charged.'" *State v. Robtoy*, 98 Wn.2d 30, 42, 653 P.2d 284 (1982) (quoting *State v. Goebel*, 40 Wn.2d 18, 21, 240 P.2d 251 (1952) (*Goebel* II)). Second, if the evidence is relevant its probative value must be shown to outweigh its potential for prejudice. Whether the proffered evidence meets these criteria is a discretionary determination to be made by the trial court, and its decision will be overturned only if the court abused its discretion. *Robtoy*, at 42.

The trial court admitted the evidence for the purpose of proving motive, a common scheme or plan, identity, and intent. Our Supreme Court has defined the word "motive" to mean "[a]n inducement, or that which leads or tempts

the mind to indulge [in] a criminal act." *State v. Tharp,* 96 Wn.2d 591, 597, 637 P.2d 961 (1981) (quoting *Black's Law Dictionary* 1164 (4th rev. ed. 1968)). It is difficult to ascertain how the prior assaults on Addy Kay and Shawna could be a motive or inducement for Hieb's later assault on Addy Kay. There is no contention that the last assault was carried out in order to conceal the prior crimes. The earlier assaults had no logical relevance to Hieb's motive for the last assault. The evidence was not admissible on this basis.

The standard for admitting evidence of collateral crimes to establish a common scheme or plan is stated in *Goebel* II, at 21:

> The only purpose of showing a common scheme or plan is to establish, circumstantially, the commission of the act charged and the intent with which it was committed. . . . Strictly speaking, the scope of this exception is limited to evidence which shows some causal connection between the two offenses, so that proof of the other offense could be said to evidence a pre–existing design, system, plan, or scheme directed toward the doing of the very act charged.

(Citation omitted.) *See also State v. Irving,* 24 Wn. App. 370, 373, 601 P.2d 954 (1979). The general similarity of the prior offenses and the crime charged is insufficient to establish a design or plan to commit the charged offense. *Goebel* II, at 22. In the case sub judice, this general similarity is the only factor linking the prior assaults and the charged offense. Evidence of the prior assaults should not have been admitted for the purpose of showing a common scheme or plan.

In appropriate cases, evidence of prior crimes may be admitted to prove the identity of the perpetrator. The need to prove identity is not of itself "a ticket of admission." E. Cleary, *McCormick on Evidence* § 190, at 451 (2d ed. 1972). Here, the only way in which the evidence tended to identify Hieb as the person who inflicted the fatal injuries was by showing a general propensity to commit assaults on children. This is precisely what ER 404(b) seeks to avoid.

The final question is whether the evidence was admissible to prove Hieb's intent and the absence of accident. Generally, evidence is admissible for this purpose only where the defendant admits doing the act, but claims he did not have the requisite state of mind to commit the offense charged. *See State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982); 2 J. Wigmore, *Evidence* § 302, at 245 (rev. 1979).

It is unclear from the verbatim report whether Hieb claimed an accident defense. The State maintains that he implied accidental injury, but in his trial briefs and argument to the trial court, Hieb steadfastly denied any knowledge of how the fatal injuries were inflicted and that his defense was accident.

The "to convict" instruction, however, required the jury to find beyond a reasonable doubt that "the defendant's conduct does not constitute excusable homicide." Excusable homicide was further defined to mean a homicide "committed by accident" and "without any lawful [*sic*] intent." Under these instructions, whether the defendant accidentally injured Addy Kay was a material issue before the jury. Accordingly, the evidence was properly admitted to show his intent and the absence of accident. *State v. Mercer,* 34 Wn. App. 654, 663 P.2d 857 (1983).

For the reasons stated, we reverse and remand for a new trial.

CALLOW, J.—I concur in the result only, based upon the requirements set forth in *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984), as stated by the Washington State Supreme Court.

WILLIAMS, J. (concurring in part, dissenting in part)—I am unable to concur in the majority opinion reversing the judgment of conviction of second degree murder and granting a new trial because the 3–year–old child was not present in court to testify. As I view the record, Hieb consented to her not being there, *i.e.,* he waived his right of confronta-

tion. The purpose of that right is to "advance a practical concern for the accuracy of the truth–determining process in criminal trials . . ." *State v. Kreck,* 86 Wn.2d 112, 118, 542 P.2d 782 (1975). "Whether the confrontation right has been denied must be determined on a case–by–case basis after examination of all the circumstances and evidence." *State v. Boast,* 87 Wn.2d 447, 453, 553 P.2d 1322 (1976).

As shown by the record, the circumstances are that on the day trial commenced the question of the admissibility of a statement by the 3–year–old, Shawna Turner, to a deputy prosecuting attorney was argued to the court upon Hieb's motion in limine. The substance of the statement was contained in the report of a police officer in attendance at the meeting between the deputy prosecutor and Shawna. A copy of that report was in the hands of defense counsel and before the trial judge. The report was not admitted as an exhibit at trial and hence is unavailable but it clearly appears from the report of proceedings that defense counsel and Hieb were then advised of what the child had said and that the deputy prosecutor, not the child, would be the witness in that regard. Defense counsel acknowledged that Shawna would not be a witness at the trial when he said,

> The other question here is certainly the evidence is going to be extremely contradictory on some of these other instances where people have seen bruises not only on the deceased but also on Shawna, the three–year–old, *who will not be called as a witness,* as to how they were caused and admissions apparently by the mother and babysitter that they were caused—some of them that were referred to here may have been caused at the babysitter's house.

(Italics mine.)

While still on the motion and before the jury was selected, the following occurred:

> THE COURT: Have you completed your argument?
> MR. SHORT: Yes.
> THE COURT: Will Shawna Turner be called as a witness during the trial of this matter?
> Ms. ROE: At this point I don't intend to call her.

During the cross examination of the deputy prosecuting attorney at trial, defense counsel inquired into the conditions of the interview and actions of both the deputy prosecuting attorney and Shawna. At no time was there an objection to introduction of Shawna's statements because she was not present nor did defense counsel at any time, although having full opportunity, even ask the prosecuting attorney about Shawna's availability as a witness.

Although the majority reverses the judgment because Shawna was "not called as a witness", defense counsel showed no interest in having her present. Rather he spoke with apparent agreement that she not take the stand. As a trial tactic this could well have been the best possible move, far less damaging than direct testimony from the little girl. The evidence was admissible under *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952), and there was more of it available from other sources. The following applies:

> Having noted appellant's decision not to call Hartzog to the stand, apparently for tactical reasons, it would have been reasonable for the prosecution not to have called Barr on its own initiative. While the burden of producing out–of–court declarants is generally on the prosecution, *Simmons v. United States,* 440 F.2d 890, 891 (7th Cir. 1971), where a defendant's apparent trial tactics and his obvious reluctance to call or subpoena a witness indicate his intention not to seek cross–examination, the "unavailability" factor will not be applied to require exclusion of the extrajudicial statements.

*State v. Boast,* 87 Wn.2d 447, 455, 553 P.2d 1322 (1976).

Under the circumstances it would be unconscionable to apply the "unavailability factor" in this case. Therefore, I dissent.

Reconsideration denied January 31, 1985.

Review granted by Supreme Court May 10, 1985.