[No. 19149-4-III. Division Three. April 10, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. RAFAEL DELAMORA MARTINEZ, *Appellant*.

*Russell R. Abrutyn* and *Antonio Salazar* (of *Salazar Law Offices*), for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Terry J. Bloor, Deputy*, for respondent.

SWEENEY, J. — The "present sense impression" exception

to the hearsay rule permits the admission of a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." ER 803(a)(1). The trial judge here admitted testimony from police of statements made by a confidential informant (CI) who was not available to testify at the trial. The police witnesses testified that the informant's cocaine supplier was "Ramon," that Ramon frequently arrived in a blue and white Chevy Blazer, and that the CI identified the same Blazer when it arrived. These are not present sense impressions. They do not then fall within an exception to the hearsay prohibition. And the court therefore erred in admitting this hearsay testimony. Without the CI's statements, the record here does not support Mr. Martinez's conviction as an accomplice to possession with intent to deliver. We therefore reverse.

## FACTS

Officers of the Tri-City Metro Drug Task Force arrested Christopher Tate in his Kennewick apartment on October 22, 1999. They offered Mr. Tate leniency if he would arrange for his supplier to come to the apartment and deliver cocaine. Mr. Tate agreed.

Detective Terry Boehmler dialed the source's phone number and handed the phone to Mr. Tate. Detectives Boehmler, Darin Pitt, and Rick Runge listened to Mr. Tate's end of the conversation. Mr. Tate made two calls to a person he addressed as "Ramon." Because of these calls, police expected Ramon to arrive in about 30 minutes with an ounce of cocaine. They believed he would be in either a red Chevy pickup or a blue and white Chevy Blazer. Mr. Tate used only the name "Ramon." He did not mention Rafael Martinez.

About 20 minutes later, a 1978 blue and white Blazer drove by the apartment, turned around, then parked in front. Mr. Tate confirmed that this was his source. Mr. Tate went downstairs to meet the car. Ramon Gomez was the passenger. The driver was Rafael Martinez. Officers arrested both men.

The officers searched Mr. Gomez, Mr. Martinez, and the vehicle. They recovered approximately an ounce of cocaine from Mr. Gomez and $279 in cash from Mr. Martinez. They also found two cell phones in the car; one rang when they dialed the number they used to contact Ramon from Mr. Tate's apartment.

Mr. Gomez later pleaded guilty to possession of cocaine with intent to deliver. The State charged Mr. Martinez with the same offense, but under a theory of accomplice liability. The State alleged that the offense occurred within 1,000 feet of a school bus stop.

At his jury trial, Mr. Martinez testified that he was innocent. He said he borrowed the blue Blazer from a relative that morning to look for a job. He had never driven the car before. He stopped at a convenience store where he ran into Mr. Gomez, who was married to a distant cousin. He agreed to give Mr. Gomez a ride. He claimed ignorance of Mr. Gomez's purpose. Mr. Gomez corroborated his story.

The State did not produce Mr. Tate at trial. Instead, over defense objections, his statements were introduced through the testimony of Detectives Boehmler, Pitt, and Runge. Each detective testified to what Mr. Tate had told him concerning the phone calls to Ramon.

In particular, Mr. Martinez's lawyer objected that the State was improperly implying that Mr. Tate "identified in advance the car that would be coming, and I don't think that's true. . . . That's really hurtful and is all hearsay, and I have no way to cross examine." Report of Proceedings (RP) at 7.

The court admitted Mr. Tate's statements under the present sense impression exception to the hearsay rule. The defense argued that the police report indicated only that Mr. Tate was asked, "Is that Ramon?" and that he answered, "yes." RP at 10. Mr. Martinez disputed the officers' recollection that Mr. Tate spontaneously stated, "That's the target vehicle." RP at 8. The court responded that this all went to weight, not admissibility.

The court at first sustained defense objections to direct quotes of Mr. Tate's statements. The State responded by modifying questions to elicit the witness's understanding after talking to Mr. Tate: "I'm not asking for Tate's specific statement, but what was your understanding about how Tate, Mr. Tate, obtained or called his source for drugs?" RP at 11. In this manner, the State elicited evidence that more than one person usually showed up to deliver drugs and that Ramon would arrive in front of the apartment in 30 minutes, with one ounce of cocaine.

The State's witness again reverted to direct quotes. But the court then overruled the defense objection:

*Q.* ... You saw a vehicle at 10:06?

*A.* Correct.

*Q.* And what sort of vehicle?

*A.* Um, this was a 1978 Chevy Blazer white over blue.

*Q.* Did Mr. Tate say anything with respect to that vehicle?

[Defense Counsel]: I'm going to object, your Honor, to that question.

THE COURT: Overruled.

*A.* What he said was, "That's the vehicle."

RP at 18.

On cross-examination, the defense asked Detective Boehmler, "was [Mr. Tate] recognizing the vehicle or was he recognizing Ramon?" The answer was, "That I personally didn't ask Mr. Tate." RP at 29.

The objection was repeated with Detective Pitt. Detective Pitt's recollection was that "I asked Mr. Tate if that was the vehicle that we were waiting for, and he said that, yes, it was." RP at 34. On cross-examination, Detective Pitt was sure Mr. Tate identified the vehicle, not Ramon, although he conceded his written report said Mr. Tate identified Ramon.

Detective Runge testified that he understood after talking to Mr. Tate that the source would be in "[a]n '80s model

red Chevy pickup or a blue and white Blazer." RP at 43.

Finally, Dean Murstig, the officer on the street, testified, without objection: "The information that we had [from] Mr. Tate is that they usually show up in a blue Blazer, so we were on the lookout for a blue Blazer." RP at 49.

The jury found Mr. Martinez guilty.

## DISCUSSION

■ Confrontation. The right to demand the physical presence at trial of an accusatory witness is not absolute under the Sixth Amendment. Face-to-face confrontation may, however, be dispensed with only when necessary to further an important public policy, and only when the reliability of the testimony is otherwise assured. *State v. Foster*, 135 Wn.2d 441, 457, 957 P.2d 712 (1998). The confrontation clause is satisfied when the proffered testimony comes within a firmly rooted exception to the hearsay rule or is otherwise supported by particularized guarantees of trustworthiness. *State v. Ackerman*, 90 Wn. App. 477, 483, 953 P.2d 816 (1998). Neither the U.S. Supreme Court nor the Ninth Circuit has adopted the present sense impression as a firmly rooted exception that will satisfy the confrontation clause. *Guam v. Ignacio*, 10 F.3d 608, 614 (9th Cir. 1993). No Washington court has ruled on it. This exception to the hearsay rule is, therefore, narrowly interpreted to avoid admitting evidence where particularized factors guaranteeing trustworthiness are not present. *State v. Hieb*, 39 Wn. App. 273, 277-78, 693 P.2d 145 (1984), *rev'd on other grounds*, 107 Wn.2d 97, 727 P.2d 239 (1986); *Idaho v. Wright*, 497 U.S. 805, 818, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). Particularized guarantees of trustworthiness are present only when cross-examination would add nothing to the reliability of the statement. *Wright*, 497 U.S. at 820. Here, cross-examination was essential.

The court admitted Mr. Tate's statements under two theories. The detectives first testified that they had a conversation with Mr. Tate. The court then permitted them

to relate what their own understanding was after Mr. Tate talked to them, concluding this was not hearsay. Second, the court permitted the detectives to testify about Mr. Tate's comment on the arrival of Ramon as a "present sense impression" exception to the hearsay rule.

■ "Backdoor" Hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Hearsay is inadmissible as evidence, with a few well-established exceptions. ER 802; *Whelchel v. Wood*, 996 F. Supp. 1019, 1024 (E.D. Wash. 1997), *aff'd sub nom. Whelchel v. Washington*, 232 F.3d 1197 (9th Cir. 2000). The trial court's factual determination of whether a statement falls within an exception to the hearsay rule will not be disturbed absent an abuse of discretion. *State v. Strauss*, 119 Wn.2d 401, 417, 832 P.2d 78 (1992). We review de novo, however, whether the court's ruling rests on an erroneous understanding of the law. *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

■ The State persuaded the court that it had eliminated the hearsay problem by rephrasing its questions in a way that avoided direct quotes from Mr. Tate. This was wrong. Inadmissible evidence is not made admissible by allowing the substance of a testifying witness's evidence to incorporate out-of-court statements by a declarant who does not testify. *United States v. Sanchez*, 176 F.3d 1214, 1222 (9th Cir. 1999) (citing *United States v. Check*, 582 F.2d 668, 683 (2d Cir. 1978)).

In *Check*, the State asked a police officer to recount— without telling the court what the absent informant actually said—what the officer's reactions were and what the state of his knowledge was after the informant spoke. This was "a transparent conduit for the introduction of inadmissible hearsay information obviously supplied by and emanating from the informant . . . ." *Check*, 582 F.2d at 678.

As in *Check*, having Detective Runge testify to the nature of his understanding after talking to Mr. Tate instead of reporting what Mr. Tate actually said was simply an attempt to circumvent the rule. The evidence was inadmissible hearsay.

Present Sense Impression. The prosecutor introduced Mr. Tate's out-of-court identification of the Blazer or Ramon through the officers' testimony. The court admitted the statements as present sense impressions. They are not present sense impressions.

■ A present sense impression is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." ER 803(a)(1). Present sense impression statements must grow out of the event reported and in some way characterize that event. *Beck v. Dye*, 200 Wash. 1, 9-10, 92 P.2d 1113 (1939). The statement must be a "spontaneous or instinctive utterance of thought," evoked by the occurrence itself, unembellished by premeditation, reflection, or design. It is not a statement of memory or belief. *Beck*, 200 Wash. at 9-10. An answer to a question is not a present sense impression. *Hieb*, 39 Wn. App. at 278.

■ Admissibility of a statement of present sense impression is based upon the assumption that its contemporaneous nature precludes misrepresentation or conscious fabrication by the declarant. *Hieb*, 39 Wn. App. at 278. The concern here, however, is not whether the declarant, Mr. Tate, had an opportunity to fabricate when the statement was made. The problem is the accuracy and reliability of the witnesses' recollection on the stand. Cross-examination of Mr. Tate was crucial to establish whether he spontaneously asserted, "That's the target vehicle," or whether he merely answered "yes" when asked, "Is that Ramon?" RP at 8, 10. The distinction is important. The first is sufficient to support Mr. Martinez's conviction as an accomplice to possession with intent to deliver. The second is not.

The State was required to prove that Mr. Martinez knowingly assisted Ramon to possess cocaine. So Mr. Tate's present sense impression that Ramon was arriving was relevant only when coupled with his memory and belief, based on a prior course of conduct, that Ramon was arriving in *a particular vehicle from which he had previously sold*

*Mr. Tate drugs*. A reasonable jury might infer from this that Mr. Martinez had accompanied Ramon to drug sales before and was, therefore, a knowing participant on this occasion. This is an essential element of accomplice liability, and there is no evidence other than this in the record. If offered, however, for this purpose, the statement is not a present sense impression. It is, rather, an inadmissible statement of memory or belief. *Beck*, 200 Wash. at 9-10.

The detectives' testimony that Mr. Tate spontaneously said something like, "here is the target vehicle" was inconsistent with the written police reports. The reports said Mr. Tate was asked, "Is that Ramon," and he said, "yes." RP at 10. Detective Boehmler did not know whether Mr. Tate was reporting having recognized a particular vehicle or whether he was recognizing Ramon. Detective Pitt's testimony is equally ambiguous:

Q. . . . you asked Mr. Tate if that was Ramon, correct?

A. Yes. . . . I[] asked him . . . if that was the vehicle.

. . . .

Q. . . . according to your report, "I asked Tate if that was the vehicle, and he identified the vehicle as being the target Ramon." . . . .

. . . .

A. He identified the vehicle.

Q. But your report says that he identified Ramon?

A. Correct.

RP at 37-38.

Without cross-examination, this essential point of whether Mr. Tate identified Ramon or the Martinez vehicle is not established. Detective Boehmler testified to his recollection of Mr. Tate's exact words. Detective Runge testified to his understanding of the facts after talking to Mr. Tate. Officer Murstig testified to his understanding of the other officers' understanding of what Mr. Tate had said. All of this is inadmissible hearsay. It was offered for the implied proposition that Mr. Tate knew that Mr. Martinez

had driven the blue Blazer in previous drug deals.

**■ Harmless Error.** A confrontation violation is a trial error which we must evaluate in the context of other evidence presented to determine whether it was harmless. *Whelchel*, 996 F. Supp. at 1024 (citing *Arizona v. Fulminante*, 499 U.S. 279, 307-08, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). Harmlessness must be determined on the basis of the remaining evidence. *Coy v. Iowa*, 487 U.S. 1012, 1021-22, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988); *State v. Palomo*, 113 Wn.2d 789, 798-99, 783 P.2d 575 (1989).

Washington law requires us to affirm the jury's verdict if the "overwhelming untainted evidence" supports the jury's verdict. *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

Here, the only evidence establishing the knowledge or intent elements of accomplice liability was the officers' account of Mr. Tate's out-of-court statements. The testimony of the informant was inadmissible hearsay, introduced in violation of the confrontation clause. The error was not harmless.

**■ Sufficiency of the Evidence.** Due process requires the State to prove beyond a reasonable doubt every element of the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The elements of accomplice liability are that the defendant knowingly promoted or facilitated the commission of a crime by either soliciting another person to commit it or by aiding or agreeing to aid the other person in planning or committing it. RCW 9A.08.020(3).

**■** There is sufficient evidence to support a conviction, if, after viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990) (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). The truth of the State's evidence is deemed estab-

lished, and all reasonable inferences are drawn in favor of the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Criminal intent may be inferred from conduct if it is evident "as a matter of logical probability." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

In determining whether the necessary quantum of proof exists, we need not be convinced of the defendant's guilt beyond a reasonable doubt. We need only be satisfied that substantial evidence supports the State's case. *State v. Turner*, 103 Wn. App. 515, 520, 13 P.3d 234 (2000); *State v. Galisia*, 63 Wn. App. 833, 838, 822 P.2d 303 (1992). Circumstantial evidence and direct evidence are equally reliable. *Delmarter*, 94 Wn.2d at 638. But the circumstantial evidence must be consistent with the hypothesis that the defendant is guilty, and inconsistent with any hypothesis or theory tending to establish innocence. *State v. Todd*, 101 Wn. App. 945, 950, 6 P.3d 86 (2000).

The untainted evidence here does not meet this test. The record contains no admissible evidence that either Mr. Tate or the officers knew Mr. Martinez before he arrived on the scene with Mr. Gomez or that Mr. Martinez participated in any previous criminal activity with Mr. Gomez. There is no evidence that Mr. Martinez knew Mr. Gomez was in possession of narcotics. The cocaine remained in Mr. Gomez's pocket until after Mr. Martinez was arrested. The only evidence is that Mr. Martinez was present at the scene. This is not enough. *State v. Amezola*, 49 Wn. App. 78, 88-90, 741 P.2d 1024 (1987) (mere presence at the scene even with assent is insufficient to support an accomplice conviction). In sum, without the hearsay, there is no evidence of accomplice liability here.

The conviction is reversed.

KURTZ, C.J., and SCHULTHEIS, J., concur.