174 P.3d 114 (2007)
STATE of Washington, Respondent,
v.
Ryan J. O'HARA, Appellant.
No. 25597-2-III.
Court of Appeals of Washington, Division 3.
November 29, 2007.
*115 Kevin Michael Korsmo, Attorney at Law, Andrew J. Metts III, Spokane County Pros. Offc. Spokane, WA, for Respondent.
Jordan Broome McCabe, Attorney at Law, Bellingham, WA, for Appellant.

PUBLISHED OPINION
STEPHENS, J.
¶ 1 Ryan J. O'Hara was charged with one count of second degree assault, and he claimed self-defense. The jury found him guilty. On appeal, he contends that he was prevented from arguing his theory of self-defense due to an erroneous instruction. He also contends that the testimony of the investigating officers violated his constitutional right to confront witnesses, and that the evidence was insufficient to support his conviction. Concluding the jury was not adequately instructed on self-defense, we reverse his conviction.

FACTS
¶ 2 On January 3, 2006, police officers Rob Boothe and Isamu Yamada were on patrol when they were dispatched to an area of north Spokane to investigate a report that an individual was being chased with a stick. When the officers arrived at the scene, they spoke with Mr. O'Hara. Mr. O'Hara told the officers that his car had been stolen by a woman named Tina Gumm. Mr. O'Hara said he had been hit in the head by Ms. Gumm and another individual. He also said that he was then chased by someone with a stick. After the officers concluded their interview with Mr. O'Hara, they took him back to the home where the incident occurred to conduct their investigation.
*116 ¶ 3 When they arrived at the home, Jeff Loree opened the door. He was bleeding heavily from the head and his clothes were drenched in blood. Mr. Loree told Officer Boothe that Mr. O'Hara hit him with a "Mag light" flashlight. Report of Proceedings (RP) at 83. Mr. O'Hara told Officer Boothe that Mr. Loree hit him for no reason and that he hit him back with the flashlight in self-defense. Officer Yamada spoke with other individuals at the home to find out what had happened. Officer Boothe also spoke to Ms. Gumm and Michael Nevin, a resident of the home. After the officers concluded their investigation, they arrested Mr. O'Hara. Mr. O'Hara was charged by amended information with one count of second degree assault.
¶ 4 At trial, Mr. Loree testified that he went to Mr. Nevin's house after leaving a bar. When he arrived at the house, Mr. Nevin and Ms. Gumm were there. About 1½ hours later, Ms. Gumm left the home. When she returned, Mr. Loree heard Ms. Gumm arguing with Mr. O'Hara about keys. Mr. Loree said he confronted Ms. Gumm and Mr. O'Hara. He said he asked the couple to have respect for Mr. Nevin's home and asked them to return the keys to each other. Mr. Loree said that Ms. Gumm and Mr. O'Hara then gave the keys to him. He said he gave one set of keys to Ms. Gumm and started to give the other set to Mr. O'Hara when Ms. Gumm asked him not to give Mr. O'Hara the keys until she could get her baby's clothes out of the trunk of the car. They then walked out to the car.
¶ 5 Mr. Loree testified that he bent over to try and get the keys into the trunk lock when Mr. O'Hara hit him. He said that he picked up a rock to protect himself and then started chasing Mr. O'Hara to prevent him from running away. Mr. Loree said that he threw the rock at Mr. O'Hara and Mr. O'Hara hit him in the head again with the flashlight. Mr. Loree said he then picked up a cedar timber and chased Mr. O'Hara with it. Mr. Loree said that he fell down while chasing Mr. O'Hara, and that Mr. O'Hara then hit him in the head four or five times with the flashlight.
¶ 6 Mr. O'Hara also testified. He testified that he went to Mr. Nevin's house to loan his car to Ms. Gumm. He said that at about 4:00 a.m., Ms. Gumm returned to the house. He said that he took a flashlight out to his car to see if his keys were in the car. When he did not find his keys, he said he went back into the house and asked Ms. Gumm for his keys. He said Ms. Gumm had let him store some items in her storage locker two days earlier, and that she would not give him his keys until he returned her storage key.
¶ 7 Mr. O'Hara said that Ms. Gumm gave Mr. Loree the keys. He asked Mr. Loree for the keys, but Mr. Loree walked out of the house. He said that he followed Mr. Loree and asked for his keys four or five times. Mr. Loree ignored his requests and instead put the key into the trunk lock and tried to open the trunk. Mr. O'Hara said he grabbed the keys from Mr. Loree's hand, but Mr. Loree hit him on the forehead with a closed fist. He said he told Mr. Loree not to open the trunk, but he tried to open the trunk anyway. He then hit Mr. Loree with the flashlight. Mr. O'Hara said that Mr. Loree next picked up a rock and chased him. He said Mr. Loree threw the rock at him, and then picked up a board and started chasing him with it. He said that he called the police while being chased by Mr. Loree and another man. Mr. O'Hara said that he did not hit Mr. Loree while being chased, but that Mr. Loree injured himself when he swung the board at him, spun around and was thrown to the ground where he hit his head.
¶ 8 At the conclusion of the evidence, the court gave the following self-defense instruction to the jury:
Instruction No. 11
It is a defense to a charge of Second Degree Assault that the force used was lawful as defined in this instruction.
The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured and/or preventing or attempting to prevent an offense against the person or a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, *117 and when the force is not more than is necessary.
The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.
The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.
Clerk's Papers (CP) at 35.
¶ 9 The court also instructed the jury as to the meaning of "malicious" used in the self-defense instruction:
Instruction No. 10
Malice and maliciously mean an evil intent, wish, or design to vex, annoy or injure another person.
CP at 34.
¶ 10 The jury convicted Mr. O'Hara as charged. This appeal follows.

ANALYSIS
A. SELF-DEFENSE AND INSTRUCTION No. 10
¶ 11 Mr. O'Hara claimed self-defense, and the trial court gave jury instruction 11, based on a pattern instruction. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02, at 196 (2d ed. 1994) (WPIC). While Mr. O'Hara does not challenge this instruction, he argues that the companion jury instruction 10 gave an incomplete definition of "malice," which omitted critical statutory language allowing the jury to infer malice from an act done in willful disregard of the rights of another. He argues the erroneous malice definition prejudiced his ability to assert self-defense because he claimed Mr. Loree acted in disregard of his rights when he refused to return his keys and attempted to open his trunk.
¶ 12 Although Mr. O'Hara failed to take exception in the trial court, the failure to properly instruct the jury on self-defense is a manifest constitutional error that may be raised for the first time on appeal. RAP 2.5(a)(3); see State v. Kronich, 160 Wash.2d 893, 899, 161 P.3d 982 (2007) (describing manifest error as one that is truly constitutional and had practical and identifiable consequences at trial); cf. State v. Studd, 137 Wash.2d 533, 547, 973 P.2d 1049 (1999) (distinguishing between invited error regarding erroneous self-defense instruction and situation in which defense counsel fails to raise issue below). We closely scrutinize jury instructions relating to a claim of self-defense. Such instructions must more than adequately convey the law. State v. LeFaber, 128 Wash.2d 896, 900, 913 P.2d 369 (1996). Read as a whole, the jury instructions must make the legal standard for self-defense manifestly apparent to the average juror. Id. Where they do not, prejudice is presumed. State v. Birnel, 89 Wash.App. 459, 472, 949 P.2d 433 (1998), review denied, 138 Wash.2d 1008, 989 P.2d 1141 (1999).
¶ 13 Here, the court submitted to the jury an instruction on malice that provided: "Malice and maliciously mean an evil intent, wish, or design to vex, annoy or injure another person." CP at 34 (jury instruction 10). This instruction omitted the following language from RCW 9A.04.110(12): "Malice may be inferred from an act done in willful disregard of the rights of another." See also WPIC 2.13, at 57 (Supp.2005). Mr. O'Hara testified that he asked Mr. Loree for his car keys four or five times. He said that Mr. Loree would not return them, but instead put them into the trunk lock of his car and then opened his trunk. Mr. O'Hara said that he hit Mr. Loree on the head to stop him from opening the trunk. Based on these facts, a properly instructed jury could have reasonably inferred malice by finding that Mr. Loree's actions constituted a willful disregard of Mr. O'Hara's rights in his personal property.
¶ 14 "An error affecting a defendant's self-defense claim is constitutional in nature and cannot be deemed harmless unless it is harmless beyond a reasonable doubt." Birnel, 89 Wash.App. at 473, 949 P.2d 433. The test is whether the jury could have accepted *118 Mr. O'Hara's version of events but found him guilty under the erroneous instruction. Id. at 472, 949 P.2d 433. Because Mr. O'Hara asserted that his actions against Mr. Loree were taken in the defense of his property, the instructional error was not harmless beyond a reasonable doubt. Failure to give a complete definitional instruction of malice in these circumstances was error, requiring reversal of Mr. O'Hara's conviction.
¶ 15 Because this matter may be retried, we also address Mr. O'Hara's contentions that his confrontation rights were violated, and the evidence was insufficient to convict him.
B. CONFRONTATION RIGHTS
¶ 16 Mr. O'Hara contends that although the State did not call Ms. Gumm, Mr. Nevin and others at the scene of the crime to testify at trial, the State essentially presented their testimony through Officer Yamada and Officer Boothe, thereby violating his right of confrontation. He argues that the testimony constituted inadmissible "backdoor hearsay." Br. of Appellant at 9; see State v. Martinez, 105 Wash.App. 775, 782, 20 P.3d 1062 (2001).
¶ 17 Mr. O'Hara did not object at trial to the admission of the officers' statements. Failure to raise an issue at trial generally waives the issue on appeal. RAP 2.5(a). Mr. O'Hara, however, contends that the statements contained inadmissible hearsay that violated his constitutional right of confrontation. This issue involves a manifest constitutional error that may be raised for the first time on appeal. RAP 2.5(a)(3); see Kronich, 160 Wash.2d at 899-901, 161 P.3d 982. Mr. O'Hara's argument concerns the following testimony by Officer Yamada and Officer Boothe:
[Prosecutor]: Okay. And so it would be common practice to continue the investigation at that point?
[Officer Yamada]: Yes.
[Prosecutor]: Okay. And what did you observe when you went to that location?
[Officer Yamada]: There were numerous people at the location. There was an individual at the house that had blood all over his face.
[Prosecutor]: Okay. All right. And what happened next, sir?
[Officer Yamada]: I started contacting people at the location to find out what exactly happened.
[Prosecutor]: Okay. And was there any other officer on scene?
[Officer Yamada]: Yeah. Officer Rob Boothe.
[Prosecutor]: Okay. And after your investigation, what happened, sir?
[Officer Yamada]: Mr. O'Hara was arrested for assault second degree, and I transported him to jail and booked him for that charge.
RP at 72.
[Prosecutor]: Okay. And what did you do when you arrived at the address, sir?
[Officer Boothe]: Once at the address, we knocked on the door to contact the other parties involved.
RP at 80.
[Prosecutor]: And how many people [were] there?
[Officer Boothe]: Several other people.
[Prosecutor]: Okay. And did you  was  Mr. Nevin present?
[Officer Boothe]: Yes, ma'am, he was.
[Prosecutor]: And was Ms. Gumm present?
[Officer Boothe]: Yes, she was.
[Prosecutor]: Okay. And did you con  had contact  did you have contact with Mr. Nevin and Ms. Gumm on that night?
[Officer Boothe]: Yes, I did.
[Prosecutor]: Have you been able to locate them since that date?
[Officer Boothe]: No, ma'am.
[Prosecutor]: Okay.
And did you contact anyone else that night?
[Officer Boothe]: I might have. But I wouldn't be able to articulate if I did, or didn't.
RP at 93.
¶ 18 We conclude this testimony did not introduce inadmissible hearsay in violation of Mr. O'Hara's confrontation rights. *119 Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Absent an applicable exception, hearsay is generally inadmissible. ER 802. "[A] court may admit a witness's out-of-court testimonial statements only if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." State v. Mason, 127 Wash.App. 554, 561, 126 P.3d 34 (2005) (alteration in original) (citing Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)), aff'd, 160 Wash.2d 910, 162 P.3d 396 (2007).
¶ 19 A police officer's testimony concerning his investigation does not necessarily introduce hearsay simply because the officer testifies he spoke with witnesses. State v. Lillard, 122 Wash.App. 422, 437, 93 P.3d 969 (2004), review denied, 154 Wash.2d 1002, 113 P.3d 482 (2005). An officer may appropriately describe the context and background of a criminal investigation, so long as the testimony does not incorporate out-of-court statements. Id. at 437, 93 P.3d 969.
¶ 20 Mr. O'Hara acknowledges that the State did not elicit any statements made by non-testifying witnesses. Reply Br. of Appellant at 2-3. He argues, however, that the substance of the officers' testimony was the witnesses' out-of-court statements, relying on Martinez.
¶ 21 In Martinez, 105 Wash.App. at 782-85, 20 P.3d 1062, the court addressed the admissibility of testimony regarding out-of-court statements under the "present sense impression" exception to the hearsay rule. The statements at issue were made by a non-testifying witness to an investigating officer, and were clearly offered for their substantive truth. Id. at 781-82, 20 P.3d 1062. Because the hearsay exception did not apply, the court appropriately held that the testimony violated the defendant's right of confrontation.
¶ 22 Here, in contrast, the officers' testimony did not concern the substance of the statements of any of the witnesses at the scene. There was no discussion what these individuals said to the officers, and none of the officers' testimony recited or referred to any out-of-court statement, verbatim or in substance. This testimony, therefore, included no hearsay and did not implicate Mr. O'Hara's right of confrontation.
C. SUFFICIENCY OF THE EVIDENCE
¶ 23 Mr. O'Hara next contends that, notwithstanding the erroneous self-defense instruction, the evidence was insufficient to support his conviction. In reviewing a sufficiency of the evidence challenge, we must ask whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-21, 616 P.2d 628 (1980). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "Credibility determinations are within the sole province of the jury and are not subject to review." State v. Myers, 133 Wash.2d 26, 38, 941 P.2d 1102 (1997). Assessing discrepancies in trial testimony and weighing the evidence are also within the sole province of the fact finder. State v. Longuskie, 59 Wash. App. 838, 844, 801 P.2d 1004 (1990).
¶ 24 To convict Mr. O'Hara of second degree assault, the State had to prove that he intentionally assaulted Mr. Loree and thereby recklessly inflicted substantial bodily harm. RCW 9A.36.021(1)(a).
¶ 25 The evidence showed Mr. Loree was bleeding heavily from his head and his clothes were drenched in blood when police arrived. Mr. Loree testified that he was hit in the head several times by Mr. O'Hara with a "Mag light" flashlight. Mr. O'Hara, however, testified that Mr. Loree hit him in the head once and that he hit Mr. Loree with the flashlight. He said that Mr. Loree injured himself when he spun around and fell on the ground. Resolution of this competing testimony called for a credibility determination, which is not subject to our review. Myers, 133 Wash.2d at 38, 941 P.2d 1102. Viewing the evidence in a light most favorable to the State, the jury could reasonably have concluded that Mr. O'Hara was guilty of second degree assault. The evidence was sufficient to support the conviction.

*120 CONCLUSION
¶ 26 We hold that jury instruction 11 failed to provide an adequate definition of malice relating to Mr. O'Hara's claim of self-defense. Accordingly, we reverse his conviction.
I CONCUR: KULIK, J.
BROWN, J. (concurring in part, dissenting in part).
¶ 27 I agree the evidence sufficiently supports conviction. I disagree with Ryan O'Hara that the trial court erred in discretionarily shaping the malice definition to fit the case facts.
¶ 28 First, I do not believe Mr. O'Hara's claimed instructional error can be considered for the first time on appeal, considering he failed to object below or offer an alternative definitional instruction. State v. Lyskoski, 47 Wash.2d 102, 111, 287 P.2d 114 (1955) (defendant may not object to the failure to give a definitional instruction if one not offered by defendant at trial); State v. Hoffman, 116 Wash.2d 51, 111-12, 804 P.2d 577 (1991) (no error when no instruction requested). Even if constitutional, the claimed error is not "manifest" because Mr. O'Hara fails to show "practical and identifiable consequences" since he was able to and did argue his case theory under the court's instructions. State v. Kronich, 160 Wash.2d 893, 899, 161 P.3d 982 (2007) (quoting State v. Stein, 144 Wash.2d 236, 240, 27 P.3d 184 (2001).
¶ 29 Second, I disagree with Mr. O'Hara that the trial court erred in defining malice. The court has broad discretion when to give and how to construct definitional instructions. The average juror commonly understands malice concepts. See Hall v. State Farm Fire & Cas. Co., 109 Wash.App. 614, 621, 36 P.3d 582 (2001) ("willful and malicious" are commonly understood terms not requiring definition). Judges need not instruct on terms commonly understood by the average juror. Lyskoski, 47 Wash.2d at 111, 287 P.2d 114.
¶ 30 Third, even if "malice" has a technical meaning, the missing sentence, allowing a permissive inference of malice from an act done in willful disregard of another's rights, did not handicap Mr. O'Hara. The omitted sentence does not limit or set the rights that may be argued from the facts and emphasizes the permissiveness of the inference, leaving the parties to argue what predicate facts have been established and suggest what conclusions might follow. See State v. Ratliff, 46 Wash.App. 325, 330, 730 P.2d 716 (1986) ("[a] permissive inference suggests to the jury a possible conclusion to be drawn" if the "predicate facts" are proven "but does not require" that conclusion). Nothing prevented Mr. O'Hara from arguing to the jury that they accept the necessary predicate facts showing Mr. Loree interfered with his keys and car trunk or arguing that those predicate facts constituted interference with his property rights with "malice" as defined. Indeed, Mr. O'Hara made that very argument, but the jury was not persuaded.
¶ 31 I would affirm. Accordingly, I respectfully dissent.