# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

JAMES JOEL ZESATI,

Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 75716-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 6, 2018

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 AUG -6 AM 8: 46

LEACH, J. — James Zesati appeals his convictions for one count of rape in the third degree and three counts of rape of a child in the third degree. He alleges a Brady[1] violation, asserts that insufficient evidence supports his convictions for rape of a child in the third degree, and challenges the trial court's admission of hearsay evidence. Because Zesati does not show that the State suppressed evidence, his Brady claim fails. The victim's detailed testimony about specific incidents of child rape provides sufficient evidence to support the three counts the State charged. Lastly, the trial court did not abuse its considerable discretion by admitting the challenged hearsay statements, which also were cumulative of the declarant's testimony. For these reasons, we affirm.

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

No. 75716-4-I / 2

## FACTS

Zesati began dating I.Z's mother, January Sinclair, when I.Z. was three years old. Zesati and January have two daughters together.[2] Zesati helped raise I.Z., and she thought of him as her father.

When I.Z. was 11 years old, her maternal grandfather, Alan Sinclair, began sexually abusing her.[3] Independently of Sinclair, Zesati began sexually abusing I.Z. when she was 14 years old.

January discovered Sinclair's abuse in September 2013 when he inadvertently "pocket-dialed" January and left a message with an explicit conversation between him and I.Z.[4] She was 15 years old at the time.[5] Sinclair was arrested, prosecuted, and convicted of rape of a child and other related offenses.[6]

On the discovery of Sinclair's abuse, Zesati stopped raping I.Z. He began raping her again a month or two after Sinclair went to prison in June 2014.

On January 20, 2015, January discovered Zesati's abuse. She was working late, and Zesati sent I.Z.'s sisters to bed early. I.Z. testified that Zesati

---

[2] To avoid confusing January Sinclair with her father, Alan Sinclair, we use January's first name.

[3] State v. Sinclair, 192 Wn. App. 380, 383, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).

[4] Sinclair, 192 Wn. App. at 383.

[5] Sinclair, 192 Wn. App. at 383.

[6] Sinclair, 192 Wn. App. at 383.

-2-

was folding laundry in his bedroom when she came in to get her laundry. Zesati came up behind her while she was getting her laundry together. He pulled her pants and underwear off while she tried to kick and push him away. Zesati forced his penis into her vagina and then lifted her up onto the bed and managed to take her shirt off, leaving her naked.

January came home unexpectedly early from work and walked in to the bedroom. There, she saw Zesati raping I.Z. January pushed I.Z. out of the room and told her to go to her bedroom. January prevented Zesati from taking a shower and took his keys so he could not leave the house.

January called 911. Officer Benjamin Jones of the Bellevue Police Department responded to the call. Officer Jones found I.Z. in her bedroom. She looked like she had been crying. I.Z. told Officer Jones that Zesati raped her that night and that he had been raping her for several years.

The next day, I.Z. went to the hospital for a sexual assault examination. Sexual assault nurse examiners saw lacerations and redness in I.Z.'s vagina. A DNA (deoxyribonucleic acid) analysis of swabs collected from I.Z. showed the presence of DNA matching Zesati's DNA profile.

The State charged Zesati with one count of rape in the third degree and three counts of rape of a child in the third degree. A jury found Zesati guilty as charged. Zesati appeals.

ANALYSIS

Brady Violation

First, Zesati contends that the State committed a Brady violation by failing to disclose an interview I.Z. gave in connection with the Sinclair prosecution.

In spring 2014, Sinclair's attorney interviewed I.Z. in preparation for Sinclair's trial. The attorney asked the following questions during the interview:

> Q:   But have you had sexual experiences with anybody else?
>
> I.Z.:   No.
>
> Q:   The sort of stuff that you did with your grandfather you've never done with anybody else?
>
> I.Z.:   I haven't.

In preparation for Zesati's trial, the defense requested material related to Sinclair's defense. The State turned over material related to the Sinclair case, but the material did not include the transcript of the interview with I.Z. On June 11, the Saturday before opening statements on Monday, defense counsel e-mailed the prosecutor to tell her that he could not find the interview transcript. On June 14, the prosecutor's paralegal e-mailed the interview transcript to defense counsel. Three minutes later, the paralegal received an e-mail confirming that the defense counsel had read the e-mail. I.Z. testified on June 16. On June 21, defense counsel first raised the issue of the missing interview

transcript with the court. Defense counsel told the court that he never received the e-mail from the State and sought dismissal under CrR 8.3(b). The trial court denied this request. The parties stipulated to the contents of the interview, and the court read it to the jury.

Zesati claims the State improperly suppressed evidence of the interview and that suppression constitutes a Brady violation. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[7] To establish a Brady violation, the defendant must show (1) the evidence is favorable to him or her because it is either exculpatory or impeaching, (2) the evidence was willfully or inadvertently suppressed by the State, and (3) the evidence is material.[8]

The State does not dispute that the evidence is favorable to Zesati. It contends, however, that it did not suppress the evidence. The trial court made a finding that the prosecution e-mailed the transcript to the defense before I.Z. testified. Zesati does not challenge this finding. So no suppression and thus no Brady violation occurred.

Also, Zesati does not show that the evidence was material under Brady. Evidence is material only if reasonable probability exists that with the

---

[7] Brady, 373 U.S. at 87.
[8] State v. Davila, 184 Wn.2d 55, 69, 357 P.3d 636 (2015).

prosecution's disclosure of the evidence to the defense, the proceeding would have had a different result.[9] "A 'reasonable probability' is shown if the suppression of the nondisclosed evidence 'undermines confidence in the outcome of the trial.'"[10]

Courts apply a different test when the prosecution unreasonably delays disclosing evidence. The defendant must show that but for the delayed disclosure, he would have been able to present a plausible strategic option that was foreclosed by the delay.[11] Zesati does not do this. Zesati was able to introduce the evidence about I.Z.'s prior interview through the stipulation. Also, I.Z. testified at trial that she never disclosed Zesati's abuse to anyone before her mother walked in on them. Thus, the interview transcript merely repeated what I.Z. had already testified about. Zesati was able to cross-examine I.Z. about her previous failure to disclose. Zesati does not show that the State's delayed disclosure foreclosed any strategic defense. So his Brady claim and his delayed disclosure claims fail.

---

[9] State v. Thomas, 150 Wn.2d 821, 850, 83 P.3d 970 (2004).

[10] State v. Mullen, 171 Wn.2d 881, 897, 259 P.3d 158 (2011) (internal quotation marks omitted) (quoting Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).

[11] United States v. Bender, 304 F.3d 161, 164-65 (1st Cir. 2002); see also United States v. Burke, 571 F.3d 1048, 1054 (10th Cir. 2009).

Sufficiency of Evidence

Zesati also contends that the State presented insufficient evidence at trial for the jury to convict him unanimously on three separate counts of rape of a child in the third degree. When reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[12] An insufficiency claim admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.[13]

The constitutional right to a jury trial requires that the jury be unanimous about the specific acts the defendant committed for each crime.[14] To ensure jury unanimity in multiple acts cases, either (1) the State must elect the particular criminal act upon which it will rely for conviction or (2) the trial court must instruct the jury that all jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt.[15] "In sexual abuse cases where multiple counts are alleged to have occurred within the same charging period, the State need not elect particular acts associated with each count so long as the evidence

---

[12] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[13] Salinas, 119 Wn.2d at 201.
[14] State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).
[15] State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988) (citing Petrich, 101 Wn.2d at 572).

-7-

'clearly delineate[s] specific and distinct incidents of sexual abuse' during the charging periods."[16]

The State charged Zesati with three counts of rape of a child in the third degree. "A person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim."[17] Thus, the charging period for these offenses was between July 9, 2012, and July 8, 2014, when I.Z. was 14 and 15 years old.

Zesati claims that the testimony is insufficient for the jury to have found specific and distinct acts occurred during this charging period. He points to I.Z.'s testimony that Zesati forced her to have sexual intercourse many times, three times a month or once a week. He contends that this testimony describes only a generic act of sexual assault without providing specific details, like dates or descriptions. But I.Z. gave detailed descriptions of specific incidents when Zesati raped her.

I.Z. described the first incident, which occurred when she was 14. She testified that Zesati came into her bedroom when he had only a towel on and

---

[16] State v. Hayes, 81 Wn. App. 425, 431, 914 P.2d 788 (1996) (alteration in original) (quoting State v. Newman, 63 Wn. App. 841, 851, 822 P.2d 308 (1992)).

[17] RCW 9A.44.079(1).

started taking off her clothes. She testified that she tried to push him away but that he was really strong and he took off his towel and forced his penis into her vagina.

I.Z. testified about another time a couple of weeks later when Zesati raped her. She was in the living room watching television on the couch. Zesati lay down on the couch next to her. I.Z. tried to kick him off while he pulled her pants down. Zesati removed his penis through the zipper of his jeans and forced his penis inside of her.

I.Z. described a third incident when Zesati raped her in his bedroom. Zesati took her homework into his room and told I.Z. to work on it in there. She was working on her homework on the floor when Zesati tried to take her pants down. She tried to twist his nipple to make him stop, but he put her on the bed, took her pants down, and forced his penis inside her.

I.Z. described another time when she was lying on the couch when Zesati pulled down her pants and put his mouth on her vagina before she kicked him away.

I.Z. described another incident of rape that occurred when she and Zesati took a trip to Sequim, Washington, and stayed in a hotel on the Olympic peninsula. Zesati tried to force her to put on white fishnet tights. Zesati then forced his penis into I.Z.'s vagina. The next day Zesati and I.Z. drove to Lake

Chelan to join I.Z.'s mother and sisters. I.Z. testified that because she drove, she thought she might have been 16 at the time. But she later testified that she began driving at 15 when she got her learner's permit. And January testified that the Sequim trip occurred on Labor Day weekend of 2013. I.Z. turned 15 in July 2013, so she would have been 15 at the time.

Although I.Z. did not testify to the specific dates of these rapes, her testimony indicated that he raped her on different occasions and in different locations while she was 14 or 15 years old. I.Z.'s descriptions of these incidents contain sufficient specific details to support three separate convictions for child rape.

## Hearsay

Next, Zesati challenges several hearsay statements. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[18] Hearsay evidence is inadmissible unless an exception applies.[19] We review a trial court's decision on the admissibility of statements under the hearsay rules for abuse of discretion.[20] We will not disturb the trial court's ruling unless we believe that no reasonable judge would have made the same ruling.[21]

---

[18] ER 801(c).
[19] ER 802.
[20] State v. Woods, 143 Wn.2d 561, 595, 23 P.3d 1046 (2001).
[21] Woods, 143 Wn.2d at 595-96.

*Excited Utterance*

First, Zesati challenges the trial court's admission of statements I.Z. made to Officer Jones under the excited utterance exception to the hearsay rule. "An excited utterance is made an exception to the rule excluding hearsay on the theory that the declarant, being under the stress of excitement caused by the startling event, is much less likely to consciously fabricate."[22] A court may admit a hearsay statement as an excited utterance if (1) a startling event or condition occurred, (2) the statement was made while the declarant was still under the stress of the startling event, and (3) the statement was related to the startling event.[23] Spontaneity, the passage of time, and the declarant's state of mind are factors courts consider to determine whether a statement is a product of reflex or instinct rather than a deliberate assertion.[24]

Here, application of these factors supports the trial court's decision. The court ruled that when Officer Jones was interviewing her, I.Z. was still under the stress of the startling event: "I would say that she must be under the stress of some startling event. It's not only the fact that she was having sex, but also that the mother found out."

---

[22] State v. Dixon, 37 Wn. App. 867, 872, 684 P.2d 725 (1984).
[23] State v. Hardy, 133 Wn.2d 701, 714, 946 P.2d 1175 (1997); ER 803(a)(2).
[24] State v. Palomo, 113 Wn.2d 789, 791, 783 P.2d 575 (1989).

Zesati challenges the trial court's decision to admit the statement on the basis that I.Z. did not appear distressed. He relies on police statements that I.Z. was not crying and was able to answer the officer's questions.[25] But according to Officer Jones, I.Z. was visibly upset. He said she looked like she had been crying and that at times she was trying not to cry. Thus, the record supports a finding that I.Z. was under the stress of the startling event.

The relatively short time between the event and the statement supports admission here, as well. The passage of time, although relevant, is not dispositive in determining whether a statement is an excited utterance.[26] In sexual abuse cases, courts have admitted hearsay statements under this exception made several hours after the startling event, depending on the circumstances.[27] January came home and discovered Zesati raping I.Z. sometime after 8:00 p.m. She called 911 shortly after she walked in on I.Z. and Zesati. Officer Jones was dispatched at around 9:00 p.m. and arrived at the scene about 5 minutes later. There, he talked to January for 15 to 20 minutes before he talked to I.Z. The record is not clear about how much time exactly

---

[25] Zesati attempts to make a point out of the sex appearing consensual to January. But what January believed when she saw I.Z. and Zesati having sex is not relevant to I.Z.'s state of mind and would be inappropriate for the court to consider.

[26] Thomas, 150 Wn.2d at 854.

[27] See State v. Thomas, 46 Wn. App. 280, 284, 730 P.2d 117 (1986), aff'd, 110 Wn.2d 859, 757 P.3d 512 (1988).

passed between the event and the statements. But less time passed than in some cases where the excited utterance exception applied when many hours had passed after the startling event.[28]

Zesati also asserts that I.Z.'s statements lack spontaneity because she was responding to police questions. But responses to questions may be admissible under this exception.[29] "The crucial question in all cases is whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment."[30] Considering that relatively little time had passed since the startling event and I.Z. appeared to be under the stress of the event when Officer Jones interviewed her, her statements are not inadmissible because they were made in response to police questioning.

Zesati also asserts that the hearsay statements did not relate to the startling event. But the test for relatedness is flexible. "For purposes of ER 803(a)(2), an utterance may 'relate to' the startling event even though it does not

---

[28] State v. Guizzotti, 60 Wn. App. 289, 803 P.2d 808 (1991); State v. Fleming, 27 Wn. App. 952, 621 P.2d 779 (1980). C.f. State v. Ramerez-Estevez, 164 Wn. App. 284, 292, 263 P.3d 1257 (2011) (declining to extend the excited utterance exception to a case where the victim was recounting rapes more than two years later).
[29] State v. Hieb, 39 Wn. App. 273, 278, 693 P.2d 145 (1984).
[30] Hieb, 39 Wn. App. at 278 (alteration in original) (quoting Johnston v. Ohls, 76 Wn.2d 398, 406, 457 P.2d 194 (1969)).

explain, elucidate, or in any way characterize the event."[31] Here, statements about the rape relate to the shock of being discovered by the mother. And statements about the prior abuse relate to the January 20 rape. In light of the broad discretion granted to the trial court in ruling on admissibility of excited utterances, the court did not err in permitting Officer Jones to testify about I.Z.'s statements.

*Medical Treatment*

Zesati also challenges testimony about I.Z.'s statements by two medical professionals. The trial court permitted Dr. Samira Farah and Sexual Assault Nurse Examiner Jade Bartolleti to testify about I.Z.'s description of the January 20 incident under ER 803(a)(4). This rule allows hearsay statements made for purposes of medical diagnosis or treatment.

Zesati challenges testimony by Dr. Farah about I.Z.'s allegations of past abuse. Dr. Farah testified that I.Z. told her that Zesati had forced her to have sex with him multiple times in the past. Zesati contends that ER 803(a)(4) does not encompass these statements of past abuse. The State contends that Zesati waived this objection because he did not object to these statements or make this argument to the trial court. Indeed, Zesati raises this issue for the first time in the appeal. He provides no reason this court should consider the argument despite

---

[31] State v. Chapin, 118 Wn.2d 681, 688, 826 P.2d 194 (1992).

the general rule that the appellate court may refuse to consider a claim of error not raised in the trial court.[32] A party may raise a claim of manifest error affecting a constitutional right for the first time on appeal. But Zesati does not provide any argument to justify consideration here.

Zesati also objects to hearsay statements by Bartolleti. The trial court allowed Bartolleti to testify about I.Z.'s description of the January 20 incident under ER 803(a)(4). Zesati claims the trial court improperly permitted Bartolleti to testify about prior abuse. But the only statements by I.Z. that Bartolleti testified about were about the events of January 20. She said nothing about I.Z.'s statements about prior abuse. Zesati provides no argument to challenge the hearsay statements that Bartolleti did make. At trial, Zesati objected to the testimony as cumulative of other evidence. The court decided that the testimony was not cumulative because Bartolleti was only the second medical witness to testify about it. Zesati does not argue on appeal that this ruling was incorrect.

Because Zesati does not provide appropriate arguments about the medical treatment exception to the hearsay rule, he fails to show that the trial court abused its discretion in admitting this testimony.

---

[32] RAP 2.5(a).

Statement of Additional Grounds for Review

Zesati filed a pro se statement of additional grounds for review, but his claims lack coherence and lack merit. His arguments primarily relate to the weight of the evidence and are thus not reviewable by this court.[33]

For example, Zesati first asserts a claim of prosecutorial misconduct. In support of this claim he merely points out inconsistencies and uncertainties about the testimony about forensic testing of I.Z.'s underwear and the dates that the detective collected the underwear from the crime scene. These arguments about the weight of the evidence and the credibility of the witnesses do not raise a claim for our review.

Further, the testimony Zesati cites does not show prosecutorial misconduct. Prosecutorial misconduct is grounds for reversal when the conduct is both improper and prejudicial.[34] When the defendant does not object to the claimed misconduct at trial, to obtain appellate relief the defendant must show that the prosecutor's conduct was so flagrant and ill intentioned that any prejudice could not have been neutralized by a curative jury instruction.[35] The

---

[33] State v. Smith, 31 Wn. App. 226, 228, 640 P.2d 25 (1982) ("Judgment as to the credibility of witnesses and the weight of the evidence is the exclusive function of the jury.").
[34] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011).
[35] Monday, 171 Wn.2d at 679 (quoting State v. Warren, 165 Wn.2d 17, 43, 195 P.3d 940 (2008)).

testimony that Zesati cites shows no improper conduct by the prosecutor. Thus, his prosecutorial misconduct claim fails.

Zesati also asserts that the State failed to disclose evidence under Brady and CrR 4.7.[36] He appears to contend that the State improperly withheld a cutting of I.Z.'s underwear. But Zesati does not show that the State suppressed this evidence. State witnesses testified about the underwear. Moreover, much of Zesati's argument refers to facts outside the record, so we are unable effectively to consider it.

To the extent Zesati raises other claims, he has not adequately explained them to permit us to review the issues. "[T]he appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors."[37]

## CONCLUSION

Zesati does not establish a Brady violation, show the evidence was insufficient to support his convictions, or show that the trial court abused its

---

[36] Zesati cites Fed. R. Crim. P. 16 requiring the government to disclose evidence. CrR 4.7 provides the relevant Washington disclosure rules.

[37] RAP 10.10(c).

discretion in admitting hearsay testimony. Nor does he identify any other claim entitling him to relief in his statement of additional grounds. We affirm.

_Leach, J._

WE CONCUR:

_Dwyer, J._         _Schindler, J._